## UNITED STATES *v.* KILPATRICK.

*(District Court, W. D. North Carolina.* May Term, 1883.)

1. **MOTION TO QUASH INDICTMENT.**
   The courts do not favor motions to quash indictments, and will not, as a rule, allow them, where they are made upon some matter which might have been presented by demurrer, or by motion in arrest of judgment, or which might be made available by way of defense in trial before a jury.

2. **SAME—ARREST OF JUDGMENT—WHEN ALLOWED.**
   Judgments can only be arrested for matter appearing in the record, or for some matter which ought to appear and does not appear therein.

3. **SAME—DEMURRER, WHEN ALLOWED.**
   A demurrer can only be used to object to an indictment as insufficient in law because defective in substance or form.

4. **SAME—GROUNDS FOR QUASHING.**
   If a bill of indictment be found without evidence, or upon illegal evidence, or for any improper conduct of the jury, or for any improper influence brought to bear upon the jury, such matters may be pleaded in abatement, or may be grounds for quashing an indictment, but cannot be availed of by motion in arrest of judgment.

5. **GRAND JURIES—THEIR POWERS, ETC.**
   A grand jury is a component part of the court, and is under its general supervision and control. Grand jurors may be punished for contempt, for any willful misconduct or neglect of duty, but they are independent in their actions in determining questions of fact, and no investigation can ever be made as to how a grand juror voted, or what opinions he expressed on matters before him.

6. **SAME—EVIDENCE.**
   Investigations before grand juries must be made in accordance with the well-established rules of evidence, and they must hear the best legal proofs of which the case admits. No evidence should be received by a grand jury which would not be admissible in a court upon the trial of a cause. Hearsay evidence upon questions before a grand jury is no more admissible than before the court.

7. **SAME—EXPERT TESTIMONY.**
   Whether a witness is or is not an expert as to any particular science or art is to be determined by the court before he can be admitted to testify before a grand jury.

8. **SAME—EVIDENCE OF CONFESSIONS.**
   Evidence of confessions should never be admitted before a grand jury, except under the direction of the court, or unless the prosecuting officer of the state

is present and can make the full preliminary inquiries necessary to render the evidence admissible.

9. SAME—GENERAL RULE AS TO EVIDENCE.

As a general rule, a grand jury should hear no other evidence than that adduced by the prosecution, but they are sworn " to inquire and true presentment make," and if, in course of their inquiries, they have reason to believe that there is other evidence not presented, and within reach, which would qualify or explain away the charge under investigation, it would be their duty to order such evidence to be produced.

10. SAME—WITNESSES BEFORE GRAND JURIES.

A witness before a grand jury has no privilege to have his testimony treated as a confidential communication, but he ought to be considered as deposing under all the obligations of an oath in a judicial proceeding.

11. SAME—VOLUNTEER WITNESSES.

It has been held a misdemeanor and high contempt of court in any individual acting as a volunteer to approach or communicate with a grand jury in reference to any matter which either is or may come before them. No person has a right to communicate private information to a grand jury for the purpose of obtaining a presentment.

12. SAME—TWO METHODS BY WHICH AN OFFENDER MAY BE PROSECUTED.

There are two methods allowed by which a person may prosecute an offender; he may give information to the solicitor of the state and have a bill of indictment prepared and sent to the grand jury, or he may make a written complaint on oath before an examining and committing magistrate, and obtain a warrant of arrest, and have a preliminary investigation of the accusations made.

13. SAME—WITH WHOM GRAND JURIES MAY ADVISE.

The court is the only proper source from which a grand jury may obtain advice as to questions of law. No other person has a right to give a grand jury an opinion on questions of law which affect the rights of individuals or society.

14. SAME—THE DISTRICT ATTORNEY.

Courts sometimes give permission to the district attorney, or his regular assistant, to go before the grand jury when requested by the foreman, or when it seems necessary he should attend for a speedy and proper administration of justice. These officers, when before a grand jury, may properly assist in examining witnesses; may advise in matters of procedure, according to the well-settled course and practice of the courts; may read statutes upon which bills of indictment are founded; but they cannot give opinions on questions of law in the case, or as to the weight and sufficiency of evidence.

15. SAME.

A district attorney may, under certain circumstances, send in a bill to a grand jury without a prior arrest and binding over.

16. SAME—JURISDICTION OF FEDERAL COURTS.

In matters which relate to the qualifications and exemptions of jurors, the federal courts must be governed by the laws of the states in which such courts are held; but in designating, summoning, forming, and impaneling juries they have a large discretion. There is no statute expressly requiring federal courts to conform their practice, pleadings, and modes of procedure in criminal trials to the laws of the state in which they are held. Federal courts derive their criminal jurisdiction from congressional statutes, but in exercising their functions they are guided by the rules of the common law when there is no statute regulating their action.

Motion to Quash Bill of Indictment.

*J. E. Boyd* and *W. S. Ball*, U. S. Attys., for the United States.

*C. M. McLoud* and *J. W. Bowman*, for defendant.

DICK, J. This case having been called for trial, the defendant filed an affidavit, upon which a motion was made to quash the indictment. After hearing evidence and full arguments I decided that the bill should be quashed, and the defendant be held to await the action of the grand jury, then in session, upon a new bill. As I was desirous of speeding an investigation and trial of the cause, I announced my conclusions of law orally, and stated that I would prepare a written opinion upon the important questions involved, so as to settle such matters of law, practice, and procedure in this district.

The grounds for the motion to quash relate to the conduct of Mr. Bowman, an examiner of the department of justice, before the grand jury which found the bill of indictment. They will be stated and considered in a subsequent part of this opinion, after I have decided some important questions of law presented and discussed in the arguments of counsel. In my judicial experience I have never had occasion to consider fully and decide some of the matters of law, practice, and procedure now before me. Upon questions pertaining to the powers, duties, and responsibilities of grand juries, and to the practice and modes of procedure before such bodies, there have been some contrariety and conflict of opinions in the courts of the several states.

This diversity in the decisions of the courts has arisen, in a great degree, from the fact that the common law is not the same in all the states. Each state has its peculiar social conditions and modes of thought, its local usages, customs, and statutes, which have changed and modified the principles and rules of the English common law, and influenced state judicial decisions. I have carefully considered the decisions and opinions of the supreme court of this state,—cited in the arguments,—and have adopted their views as to the common law of this state, as I think such views are not in conflict with any decision of the supreme court of the United States, or with any positive congressional legislation.

In matters which relate to the qualifications and exemptions of jurors the federal court must be governed by the laws of the states in which such courts are held. In designating, summoning, forming, and impaneling juries, the federal courts have a large discretion, and may by rules or order adopt the state methods and usages, so

far as practicable, as a strict conformity with state laws is not required. There is no statute expressly requiring federal courts to conform their practice, pleadings, and modes of procedure in criminal trials, to the laws of the state in which they are held.

There is no common law of the United States, and federal courts derive their criminal jurisdiction entirely from congressional statutes; but, in exercising their functions, they are guided by the rules of the common law, where there is no national statute regulating their action, and I am of the opinion that, in determining what these rules are, they should be greatly influenced by the decisions of the highest courts of the state in which they administer criminal justice. This course of practice and procedure would be in accordance with the liberal spirit of national legislation in regard to the common-law civil cases in the federal courts. The best interests of the whole country require that there should be as little conflict of opinion and diversity of legal procedure as possible, between the state and national courts that administer justice in the same communities.

The grand jury is an institution that had its origin in the early periods of the common law. It has always been highly estimated and venerated in England and in this country, as it has been considered as a safeguard of the liberties of the people against the encroachments and oppressions of political power, and against unfounded accusations prompted by private malice, personal animosity, or other improper motives. In contemplation of law grand juries are composed of the best and most intelligent citizens of the community,—men strictly impartial and free from all objections, and having permanent interests in the property of the country, and thus interested in securing justice and preserving the peace, good order, and well-being of society. 1 Chit. Crim. Law, 307.

As the grand jury is an informing and accusing body, which makes its investigations and holds its deliberations in secret, and is irresponsible for its official action upon matters of fact, except before the tribunal of public opinion, it is very important that its powers, duties, and methods of procedure should be well understood, and be strictly confined within the conservative and salutary limits imposed by law, which experience has shown to be necessary to subserve the public good, and to accomplish a just and impartial administration of the criminal law.

In state courts, where common-law jurisdiction over offenses is exercised, the powers and duties of grand juries are more extensive and responsible than in federal courts, which have cognizance only of

offenses defined and declared by acts of congress; and there are special officers and agents appointed to make preliminary investigations of offenses against national laws. State grand juries have a general supervision over the peace, good order, and well-being of society, and may make presentments of offenses which are within their own personal knowledge and observation, or such as are of public notoriety and injurious to the entire community; but they cannot make inquisitions into the general conduct and private business of their fellow-citizens, and hunt up offenses by sending for witnesses to investigate vague accusations founded upon suspicions and indefinite rumors. The repose of society, as well as the nature of our free institutions, forbid such a dangerous mode of inquisition.

A prosecuting offcer has no right to send witnesses to the grand jury room merely to be interrogated whether there has been any violations of law within their knowledge. *Lewis* v. *Com'rs*, 74 N. C. 194.

An individual has no right to communicate private information to a grand jury for the purpose of obtaining a presentment. If he desires to prosecute an offender there are two modes by which he may accomplish his purpose. He can give information to the solicitor of the state, and have a bill of indictment prepared and sent to the grand jury, and have his name marked as prosecutor, and thus become responsible for the costs and other liabilities which he may incur for the prosecution of a criminal action which he has instituted. He may also make a written complaint on oath before an examining and committing magistrate, and obtain a warrant of arrest and have a preliminary investigation of the accusations made, when and where the defendant can confront his accuser and witnesses with other testimony and have counsel for his defense. This mode is in conformity with our state and national constitutions, and consonant with the principles of natural justice and personal liberty founded in the common law.

It has been held a misdemeanor and a high contempt of court in any individual, acting as a volunteer, to approach or communicate with the grand jury in reference to any matter which either is or may come before them. 1 Whart. Crim. Law, § 507.

A grand jury is a component part of the court, and is under its general supervision and control, and grand jurors may be indicted, or punished for contempt, for any willful misconduct or neglect of duty; but they are independent in their action in determining ques-

tions of fact, and no investigation can ever be made as to how a grand juror voted, or what opinions he expressed upon such questions. They should be governed, as to questions of law, by instructions from the judge, and such instructions should generally be given in open court. No other person has a right to give a grand jury an opinion on questions of law which affect the rights of individuals or society.

In the case of *Lewis* v. *Com'rs, supra,* Mr. Justice' BYNUM, with the approval of the court, expressed the opinion, in strong terms, that a solicitor cannot instruct the grand jury in the law; and he has no business in the grand jury room. He then said:

"None but witnesses have any business before them. No one can counsel them but the court. They do not communicate with the solicitor, but with the court, either directly or through an officer sworn for that purpose. They act upon their own knowledge or observation in making presentments. They act upon bills sent from the court with the witnesses. The examination of witnesses is conducted by them without the advice or interference of others. Their findings must be their own, uninfluenced by the promptings or suggestions of others, or *the opportunity thereof.*"

I concur in the views thus tersely and forcibly expressed, and, with slight modifications, have announced some of them in my oral charges to grand juries. In deference to the opinions of some eminent federal judges, and in part conformity to the usual practice of federal courts, I have given permission to the district attorney and his regular assistant to go before the grand jury when requested by the foreman, or when they regard their presence necessary for a speedy and proper administration of justice. I think that I may presume that lawyers of high standing, and officers of the government intrusted with the performance of important public duties, will not use their official position and the privilege granted by the court to oppress or in any way impair the legal rights of the citizen. When before the grand jury these officers may properly assist this body in the examination of witnesses; may direct them in matters of procedure according to the well-settled course and practice of the courts; may read statutes upon which bills of indictment are founded; but they cannot give opinions upon questions of law which affect the rights and liberties of the citizen charged with crime, or give any advice as to the weight and sufficiency of evidence.

The district attorney, according to the usual practice, may, on his official responsibility, send a bill to a grand jury without a prior arrest and binding over, but he should exercise this power cautiously,

and never so act unless convinced that the exigencies of the occasion or the general public good demand it. If he has any doubts as to the propriety of such action he should consult the court. 1 Whart. Crim. Law, § 458, and notes.

Mr. Justice FIELD, in an able and well-considered charge to a grand jury in California, (5 Amer. Law J. 259,) very clearly defined his views as to the powers and duties of grand juries in the federal courts. He said, in substance, that their investigations are limited to such offenses as are called to their attention by the court, or submitted to their consideration by the district attorney; or such as may come to their knowledge in the course of their investigations of matter brought before them, or from their own observations; or such as may be disclosed by members of the body. With the above exceptions, he was of opinion that all criminal prosecutions should be commenced by preliminary examinations before a magistrate, where a person accused of crime may meet his accuser face to face, and have an opportunity for defense; as this method of procedure affords the citizen the greatest security against false accusations from any quarter. He also, in strong terms, directed the grand jurors not to allow private prosecutors to intrude themselves into the grand jury room and present accusations. On this subject he dwelt at some length and referred to high authority, urging the importance of securing grand juries against outside influences and improper interferences, which, if allowed, "would introduce a flood of evils, disastrous to the purity of the administration of criminal justice, and subversive of all public confidence in the action of these bodies." In this connection he quoted the act of congress entitled "An act to prevent and punish the obstruction of the administration of justice in the courts of the United States." Rev. St. §§ 5404–5.

Investigations before grand juries must be made in accordance with the well-established rules of evidence, and they must have the best legal proof of which the case admits. In this respect they are judicial tribunals. The prosecuting officer is presumed to be familiar with the rules of evidence, and it is his duty to take care that no evidence is received by the grand jury which would not be admissible in a court upon the trial of a cause. 1 Whart. Crim. Law, § 493.

If there should be any doubts as to the admissibility of evidence, the grand jury should submit the question to the court for its instructions and directions. Such inquiries should be made in writing, and the judge must determine whether the instructions should be by written communication or from the bench.

I will illustrate these legal propositions by reference to some questions which were suggested by the evidence in this case. The offense charged in the bill of indictment with technical precision is, in substance, that the defendant made and caused certain accounts to be presented to the treasury department for payment, well knowing them to be false and fraudulent. The fact of presentation is an essential ingredient of the crime alleged, and could only be proved by witnesses who could speak from their own knowledge of such facts, and not from information derived from others. The officers who received and filed such accounts were the best witnesses upon this subject. *Hearsay* evidence upon the question would not be admissible before the court or the grand jury.

A witness is sometimes allowed to testify as an *expert* on questions of science and art upon which he has superior knowledge, but such testimony is not admissible as to matters of common knowledge in business transactions. 94 U. S. 469. Whether a witness is or is not an *expert* as to any particular science or art is to be determined by the court before he can be admitted to testify before the grand jury, or in the trial of a cause. A voluntary confession of guilt, made by a defendant, is admissible in evidence; but in any case, before it is admitted, it ought to appear that it was made voluntarily, and that no motives of hope or fear were employed to induce the accused to make it. All authorities agree that such evidence ought to be taken with great caution, and courts regard with suspicion confessions made to "a person in authority." The preliminary evidence on this question · ought to be clear and satisfactory, showing that there were no inducements by promises of temporal advantage, or threats of the exercise of power. Cooley, Crim. Law, 314; *State* v. *Matthews*, 66 N. C. 106. Evidence of confessions ought never to be admitted before a grand jury, except under the direction of the court, or unless the prosecuting officer of the government is present and carefully makes the preliminary inquiries necessary to render the evidence admissible.

As a general rule grand juries should hear no other evidence than that adduced by the prosecution, but they are sworn "to inquire and true presentment make," and if, in the course of their inquiries, they have reason to believe that there is other evidence, not presented and within reach, which would qualify or explain away the charge under investigation, it would be their duty to order such evidence to be produced. A grand jury ought not to find a bill upon evidence merely sufficient to render the truth of the charge probable; their

judgments should be convinced that the evidence before them, unexplained and uncontradicted, would warrant a conviction by a petit jury. Mr. Justice FIELD, charge *supra.*

As to how far grand jurors may be allowed or compelled to testify as to proceedings before their body, is a question upon which there is some diversity of decisions in the courts. By the policy of the law grand juries act in secret, and, with the view of sustaining that policy, it is prescribed that a grand juror shall, among other things, swear that "the state's counsel, your fellows', and your own, you shall keep secret." The principal ground of that policy is to inspire the jurors with a confidence of security in the discharge of their responsible duties; and secrecy as to the actions and the opinions of jurors upon matters before them must ever remain inviolable.

A witness has no privilege to have his testimony treated as a confidential communication, but he ought to be considered as deposing under all the obligations of an oath in a judicial proceeding; and the oath of a grand juror is no legal or moral impediment to his solemn examination, under the direction of the court, as to the evidence before him, whenever it becomes material to the administration of justice. *State* v. *Broughton*, 7 Ired. 96.

I think the grand juror in this case was a competent witness, and his written examination and testimony were confined within legal limits. It is the duty of a court to look into what is brought to its attention outside the indictment, and even outside the record, in a cause, to see that a prosecution is properly instituted. *State* v. *Horton*, 63 N. C. 595.

It was insisted by the counsel for the prosecution that motions to quash indictments are not favored by the courts, and are not usually allowed. This position is correct where the motion is founded upon some matter which could be presented by demurrer, motion in arrest of judgment, or which could be·made available by way of defense on trial before a jury. In such cases the practice of this court has been to refuse the motion. I have carefully considered the matters alleged in the affidavit and developed in the evidence, and I am of the opinion that they cannot properly be made available by the defendant in any other way than by plea in abatement or by motion to quash. Judgment can only be arrested for matter appearing in the record, or for some matter which ought to appear and does not appear in the record. A demurrer can only be used to object to an indictment as insufficient in law, because defective in substance or form. In this country demurrers in criminal proceedings are not

usual in practice, as all errors which can be thus presented can be availed of on motion in arrest of judgment. If a bill of indictment be found without evidence, or upon illegal evidence, or for any improper conduct of the jury, or for any improper influence brought to bear upon the jury, such matters may be pleaded in abatement or may be ground for quashing an indictment, but cannot be availed of by motion in arrest. All such objections must be made before a trial. *State* v. *Horton, supra.*

Having briefly discussed and determined the important questions of law presented in the arguments of counsel, I will now proceed to consider the material questions of fact arising from the evidence, which was taken in writing and is now before me.

It was insisted in support of the motion that Mr. Joel W. Bowman, examiner of the department of justice, instructed the grand jury as to questions of law when acting upon the bill.

On this point Mr. Israel, who was a grand juror at the time the bill was found, testified as to Mr. Bowman's conduct: "He had a paper showing what was law and what was not. He would tell us what was law. He asked some witnesses questions. He said it was against the law to defraud the government, and it was if you endeavored to do it, even if you did not do it." To this positive statement Mr. Bowman replied in his testimony: "I have no recollection whatever of ever having advised the body, or any member thereof, as to matters of law, nor do I think I did so." There is some discrepancy between the testimony of witnesses of good character, but in this instance I will not apply the usual rules of evidence and decide the question of fact, as there are sufficient undisputed matters of fact upon which I can found my decision. I have, in a former part of this opinion, stated the principles of law relating to this subject.

· It was further insisted by the counsel of the defendant that Mr. Bowman carried before the grand jury and used in the investigation of this case papers that were not admissible evidence, because not properly authenticated. Upon this point the grand juror testified that Mr. Bowman had accounts with him: "He had a large roll of papers. He said he was sent here by the government. I think he said they were from the treasury department. He explained a good deal about them, and told us how it was on such and such." In reply to this testimony Mr. Bowman said: "I was the custodian of the accounts upon which this indictment is based, which accounts I received from the files of the treasury department. I went before the grand jury as a witness to identify the particular sheets in the accounts, and to

show that they were the identical accounts presented to the treasury department for payment." On cross-examination he was asked, "Did you have any letters or affidavits before the grand jury?" to which he replied, "I might have had both, but am not sure. I don't think I presented any of them. I don't think I untied them, if I had them with me." Upon some of these points the testimony is confused, incomplete, and unsatisfactory. If Mr. Bowman in *person* received the original accounts from the treasury department, and had personal knowledge that they had been presented to that department for payment, then he was a competent witness to prove such facts; but he ought to have stated how he acquired such information in regard to papers that belonged to a department in which he was not employed. The officers of the treasury who received such papers and had them in their custody are the best witnesses to such material facts. If Mr. Bowman derived his information upon such subjects from the officers of the treasury, then his information was *hearsay* evidence, and the accounts presented upon such evidence were inadmissible before the grand jury, and improperly influenced their action. If Mr. Bowman had letters and affidavits before the grand jury, and did not use them in any way whatever, his motive in carrying them there might be a subject of comment on the part of counsel, but he committed no offense in law. The evidence as to some of the points is so indefinite that I will not express an opinion on the subject.

It was further insisted by the counsel of the defendant that Mr. Bowman was present before the grand jury, directed their inquiries, assisted in the examination of the witnesses, and made statements as to the sufficiency of proof calculated to influence the deliberations of that body upon this indictment. Upon these points, I find the following facts from the written evidence: That Mr. Bowman was introduced to the grand jury by the district attorney, or his assistant; that he remained in the room during the examination of many of the witnesses; that, at the request of some member of that body, he assisted them in their investigations by explaining accounts while the witnesses were on examination, and he asked some questions; that he directed the inquiries of the grand jury, at the request of some member, by telling them what certain witnesses would testify before they were introduced into the room; that he did not regard himself as a prosecutor, but simply a witness, at the command of the jury and in duty bound to obey them: and that he left the room before any ballot was taken.

As to the question of fact, whether he made any statements as to the sufficiency of proof as to any points connected with the charges in the indictment, the evidence is too indefinite for me to express a positive opinion. Mr. Bowman, when on cross-examination, was asked to give a positive answer as to the inquiry. He said: "I don't think I did. I think I am safe in saying I did not. I have no recollection of it."

Mr. Davis, the officer of the grand jury, testified that Mr. Bowman was in the grand jury room for some time. "I recollect, when Mr. Bowman came out, he spoke to some one—I think a witness—and said, 'I have got my bill.'"

I will pass over other questions of facts developed in the evidence about which there are differences between the recollections of Mr. Bowman and Mr. Davis, the officer of the grand jury. I will not attempt to weigh or reconcile conflicting testimony, but place my judgment upon the facts found from the statements of Mr. Bowman as to which there is no substantial contradiction.

The written statement which the court, by adjourning, allowed Mr. Bowman time and opportunity to make with care and deliberation, after he had heard the testimony of the grand juror, shows that he was not guilty of intentional wrong or a contempt of the authority of the court, and it also shows sufficient ground for quashing the indictment. I am not fully advised as to the peculiar functions and duties of an examiner of the department of justice; but, I suppose, from the dignity of the official title, that he is an important officer duly authorized to investigate matters, committed to him by his department, in which there are irregularities, apparent frauds, or other suspected violations of law; that in accomplishing the ends of justice he affords fair opportunities for innocent parties to make reasonable explanations and adjustments; and that he reports to the proper authorities such negligent defaults of duty and such willful offenses as he may, in his official capacity, deem proper for a civil action or criminal prosecution. The other officers of the government, in any way connected with such matters, should afford him all proper facilities in their power to aid him in the performance of his duties. When he comes into a court of justice as a witness he is entitled to all the privileges and immunities of other witnesses; nothing more and nothing less. It is his duty to communicate to the district attorney information as to the facts of a case which he has investigated, and during the progress of a trial he may sit in the bar of the court and

make suggestions to the district attorney upon matters of evidence, but he certainly cannot enter the grand jury room and assist that body in their investigations. The district attorney exercises that privilege only by the *express permission* of the court, and I am inclined to the opinion that the court could not legally confer such high authority upon an examiner of the department of justice.

There was no necessity for the action of Mr. Bowman as custodian of the papers. Papers which are used as evidence in the prosecution of criminal trials should be placed in the custody of the court, and be subject to its inspection and control. I am of the opinion that no documentary evidence ought ever to be submitted to a grand jury except under the direction of the court.

The information which Mr. Bowman possessed as to the items of account must have been derived, in a great degree, from the officers of the treasury who had received and had special charge of said accounts, or from the witnesses which he had examined in the course of his investigations. This information could easily have been communicated to the district attorney or his assistant, who are skillful, able, and learned in their official duties and very prompt in discharging them. A judgment quashing a bill puts an end to that case, and frees the defendant from the accrued costs, but not from further investigation of the charges alleged, and it causes very little inconvenience and delay in the prosecution at the same term. The defendant is held to answer on a new bill, which may be sent to the grand jury with the attending witnesses, and on the return of a true bill a trial can at once be commenced.

It is all-important to the best interests of the government and of society that willful offenders should be speedily tried and punished, but it is equally important that the citizen should not be deprived of those guaranties which the law affords for securing his personal rights and liberties. Perhaps the most important protection to personal liberty consists in the mode of trial which is secured to every person accused of crime. From its initiation until guilt is established beyond a reasonable doubt by the verdict of a jury, a trial is surrounded by certain safeguards which the government cannot dispense with. Cooley, Const. Lim. 309. Courts cannot administer justice unless they enforce the well-settled principles and observe the due forms of law. Any other mode of trial would be a mockery of justice and judicial oppression, and would soon render courts objects of public distrust and aversion.

Upon careful consideration, after an examination of authorities, I am well satisfied that my judgment quashing the bill of indictment in this case was in accordance with the plainest principles of natural justice and the laws of the land.