## WILSON et al. v. UNITED STATES.
### No. 10182.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1935.

FARIS, Circuit Judge, dissenting.

———◆———

Joseph R. Brown, of Ft. Smith, Ark. (Bush & Bush, of Prescott, Ark., and John Duty, of Rogers, Ark., on the brief), for appellants.

Clinton R. Barry, U. S. Atty., and John E. Harris, Asst. U. S. Atty., both of Ft. Smith, Ark. (Duke Frederick, Asst. U. S. Atty., of Ft. Smith, Ark., on the brief), for the United States.

Before STONE, SANBORN, and FARIS, Circuit Judges.

SANBORN, Circuit Judge.

The facts out of which this controversy arises are not in substantial dispute, although the parties differ as to the inferences which may properly be drawn from them.

The appellants, Wilson and Gurley (who will be referred to as the defendants), had been for some years prior to June 30, 1933, in the employ of the government at Fort Smith, Ark., the former as a prohibition agent, and the latter as Assistant Prohibition Administrator. They were furloughed on June 30, 1933. It had been the duty of Wilson to search out violations of the National Prohibition Act and to apprehend those committing them. He had apparently been active in that regard prior to his separation from the service, and had participated in a large number of raids upon illicit manufacturers of liquor in the Western District of Arkansas. He had arrested operators of illicit stills and had made charges against them before the United States Com-

missioner, who had bound them over to the grand jury. After Wilson and Gurley were furloughed, and before the grand jury had been convened in the fall of 1933, they sought out some of these violators against whom Wilson had evidence and had made charges, but who were not yet indicted, and offered to have the proceedings against them dismissed or disposed of for a consideration to be forthwith paid in cash. The defendants' prices were evidently regarded as reasonable, the standard fee apparently being $10 for guaranteeing the satisfactory disposal of each offense charged, and they met with considerable success in their enterprise. The government, however, believing that this money was being received by the defendants for the purpose of securing the suppression of Wilson's evidence against those who were making the payments, procured an indictment against the defendants, charging Wilson with having on six separate occasions accepted a bribe upon an agreement that his testimony would be influenced thereby, in violation of title 18, § 240, U. S. C. (18 USCA § 240); and charging Gurley with being an aider and abetter of Wilson. Upon the trial, the first count of the indictment was dismissed. The defendants were found guilty upon the last five counts, and were each sentenced to two years in the penitentiary. They have appealed from the judgment and sentence.

Many of the assignments and specifications of error relate to rulings upon the evidence. There has been, with respect to such assignments and specifications, no attempt to comply with rules 11 and 24 of this court, and we are therefore not called upon to consider the challenged rulings. Ford Motor Co. v. Brady (C. C. A. 8), 73 F.(2d) 248.

■ The assignments and specifications relating to errors in the charge of the court will not be considered because they are not based upon any exceptions taken to the court's charge. Busch v. United States (C. C. A. 8) 52 F.(2d) 79, 87.

■ The defendants' requests for instructions are not included in the bill of exceptions, and therefore the alleged errors of the court with respect to the refusal of requested instructions cannot be considered.

The defendants have challenged the overruling of their demurrer to the indictment and the denial of their motion for a directed verdict on the ground of the insufficiency of the evidence.

■ It was claimed by the defendants upon the trial that those who paid them money did so, not upon any agreement or understanding that the testimony of Wilson should be influenced thereby, but for the purpose of retaining the services of Gurley as an attorney, and that Gurley had received all of the money paid. It appeared that Gurley had been admitted to practice in the state courts of Arkansas, although he had never either studied or practiced law. It was conceded that he had not been admitted to practice in the federal court. There was nothing in the evidence to indicate that any of those who had paid money to the defendants, or either of them, had any idea of employing Gurley as counsel, or that the money was paid upon any representation by the defendants that it was in consideration for his services as a lawyer. The money was paid to avoid indictment and prosecution. So far as the evidence shows, the defendants had nothing to sell except the suppression of Wilson's evidence, and, although the purchasers testified that no agreement to the effect that Wilson's testimony against them was to be influenced by their payments, was actually expressed, we think that the jury were justified in inferring that bribes were accepted for that reason and upon that understanding, since the testimony is inconsistent with any other reasonable hypothesis. The court below was not required to direct a verdict for the defendants unless the facts, as pleaded in the indictment and as found by the jury, did not constitute a crime.

Count 2 of the indictment is fairly typical of all of the counts, and charges as follows:

"That heretofore, on or about June 23, 1933, one John Clark was arrested and brought before J. Warren Stevens, as United States Commissioner in the Texarkana Division of the Western District of Arkansas, upon a charge of unlawfully manufacturing intoxicating liquor in violation of the laws of the United States. That at said hearing the said John Clark was duly bound over by the said J. Warren Stevens, as United States Commissioner, aforesaid, upon said charge to await the action of a Grand Jury of the District Court of the United States for the Western District of Arkansas, and that ever since said time the said criminal action against the said John Clark, as aforesaid, has been and is now pending in said United States District Court for the

Western District of Arkansas, Texarkana Division.

"That one Owen R. Wilson was on said June 23, 1933, a prohibition investigator in the employ of the United States and that he in company with others officers arrested the said John Clark on said charge, as aforesaid, and that at the time of such arrest the said Owen R. Wilson witnessed the fact that the said John Clark was engaged in the unlawful operation of a still in manufacturing whiskey in violation of the laws of the United States, and the said Owen R. Wilson has knowledge of facts tending to prove that the said John Clark is guilty of the offense or offenses for which he stood charged in said criminal action, as aforesaid, and that the said Owen R. Wilson would have been and is a material and important witness for the United States and against the said John Clark before any grand jury of the United States inquiring into the offenses charged against the said John Clark, as aforesaid, and at the trial of the said John Clark in the United States District Court for the Western District of Arkansas upon any indictment which might be found, presented and filed against the said John Clark for the offenses for which he stands charged, as aforesaid. That on or about November 13, 1933, in the city of Texarkana, in the Texarkana Division of the Western District of Arkansas, the said Owen R. Wilson asked for and accepted from the said John Clark the sum of, to-wit: Five ($5.00) Dollars, upon an agreement and understanding that his testimony in said criminal action against the said John Clark, as aforesaid, should be influenced thereby.

"* * * That one S. M. Gurley in said District well knowing the premises and on or about said November 9, 1933, and in Nevada County, State of Arkansas, and being present at the time and place that the said John Clark paid to the said Owen R. Wilson the said bribe in the sum of Five Dollars, as aforesaid, did aid and abet the said Owen R. Wilson in asking for and accepting said bribe in the manner and form aforesaid."

Title 18, § 240, U. S. C. (18 USCA § 240), reads as follows: "Whoever, being, or about to be, a witness upon a trial, hearing, or other proceeding, before any court or any officer authorized by the laws of the United States to hear evidence or take testimony, shall receive, or agree or offer to receive, a bribe, upon any agreement or understanding that his testimony shall be influenced thereby, or that he will absent himself from the trial, hearing, or other proceeding, or because of such testimony, or such absence, shall be fined not more than $2,000, or imprisoned not more than two years, or both."

The contention of the defendants is that the statute in question applies only to one who is or is about to be a witness before a court or before an officer authorized to hear evidence, and that it does not apply to one who is or is about to be a witness before a grand jury; that a grand jury is neither a court nor an officer. It is argued that, since in Todd v. United States, 158 U. S. 278, 15 S. Ct. 889, 39 L. Ed. 982, it was held that a witness before a United States Commissioner was not a witness in a United States court, and, in United States v. Clark, Fed. Cas. No. 14,804, 1 Gall. 497, it was held that a perjury committed by a witness on a preliminary hearing before a United States District Judge was not a perjury done in a court of the United States, it should be held that a witness before a grand jury is not a witness before a court. It is further argued that, because those who had given bribes to Wilson had not been indicted, no cases were pending before the court; so that Wilson was not and was not about to be a witness in court at the time he received the bribes.

There are no common-law crimes against the United States. United States v. Eaton, 144 U. S. 677, 12 S. Ct. 764, 36 L. Ed. 591; Donnelley v. United States, 276 U. S. 505, 511, 48 S. Ct. 400, 72 L. Ed. 676. Each criminal case requires the construction of a statute to determine whether the acts or omissions of the accused are denounced as punishable. One may not be punished for a crime against the government unless the facts shown plainly and unmistakably constitute an offense within the meaning of an act of Congress. United States v. Lacher, 134 U. S. 624, 628, 10 S. Ct. 625, 33 L. Ed. 1080; Todd v. United States, supra, 158 U. S. 278, page 282, 15 S. Ct. 889, 39 L. Ed. 982; Fasulo v. United States, 272 U. S. 620, 629, 47 S. Ct. 200, 71 L. Ed. 443; Donnelley v. United States, supra, 276 U. S. 505, page 511, 48 S. Ct. 400, 72 L. Ed. 676; United States v. Gradwell et al., 243 U. S. 476, 485, 37 S. Ct. 407, 61 L. Ed. 857; United States v. Bathgate, et al., 246 U. S. 220, 225, 38 S. Ct. 269, 62 L. Ed. 676; Speeter v. United States (C. C. A. 8) 42 F.(2d) 937, 940, 941. But the rule that a penal statute is to be strictly

construed in favor of persons accused, is not violated by allowing the language of the statute to have its full meaning, where that construction supports the policy and purposes of the enactment. United States v. Hartwell, 6 Wall. 385, 395, 396, 18 L. Ed. 830; United States v. Wiltberger, 5 Wheat. 76, 95, 5 L. Ed. 37; Donnelley v. United States, supra, 276 U. S. 505, page 518, 48 S. Ct. 400, 72 L. Ed. 676. And when a construction contended for unduly restrains the language of a statute and is contrary to the purposes of the act and the policy of Congress, it will not be sustained. Donnelley v. United States, supra, 276 U. S. 505, page 518, 48 S. Ct. 400, 72 L. Ed. 676.

■ The purpose and policy of the enactment here involved is obvious. It is to prevent miscarriages of justice through the accepting of bribes by material witnesses for the suppression or the changing of their evidence in cases, hearings, and proceedings in the courts of the United States, as well as before committing magistrates and other officers authorized to hear evidence and take testimony. There is every reason why the courts should not unduly limit or restrict the language of the statute.

■ Under the defendants' interpretation of this statute, a witness before a United States Commissioner and a witness upon a trial would come within its terms, but a witness before a grand jury would not. But, "all laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose." United States v. Katz et al., 271 U. S. 354, 357, 46 S. Ct. 513, 514, 70 L. Ed. 986; Hawaii v. Mankichi, 190 U. S. 197, 212, 23 S. Ct. 787, 47 L. Ed. 1016; United States v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278. And see In re United States, Petitioner, 194 U. S. 194, 24 S. Ct. 629, 48 L. Ed. 931, and Glickstein v. United States, 222 U. S. 139, 143, 32 S. Ct. 71, 56 L. Ed. 128.

■ Reduced to its lowest terms, the question with which we are confronted is whether, taken according to their ordinary meaning, the words of the statute are sufficient to make the facts stated in the indictment and found by the jury a punishable offense. See Donnelley v. United States, supra, 276 U. S. 505, page 512, 48 S. Ct. 400, 72 L. Ed. 676. If Wilson, at the time he

accepted bribes, was or was about to be a witness "upon a trial, hearing, or other proceeding, before any court," the conviction should be sustained. If he was not such a witness, there should be a reversal.

After a preliminary hearing has been held, and an accused has been bound over for his appearance before the court having jurisdiction to try him for the offense with which he stands charged, there is a proceeding pending in and before that court, although, in a strict legal sense, it may not be a "case" or an "action." United States v. Bittinger (Mo.) Fed. Cas. No. 14,598; Southern Surety Company v. State of Oklahoma, 241 U. S. 582, 36 S. Ct. 692, 60 L. Ed. 1187; Conley v. United States (C. C. A. 8) 59 F.(2d) 929, 934. "The word 'proceeding' is not a technical one, and is aptly used by the courts to designate an inquiry before a grand jury." Hale v. Henkel, 201 U. S. 43, 66, 26 S. Ct. 370, 375, 50 L. Ed. 652.

A grand jury is a part of the court.

"It has been justly observed, that no act of congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers? The answer is, that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But, how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential. Grand juries are accessories to the criminal jurisdiction of a court, and they have power to act, and are bound to act, so far as they can aid that jurisdiction." Chief Justice Marshall, in United States v. Hill et al., Fed. Cas. No. 15,364, 1 Brock. 156.

"It is also claimed that a grand jury is not a court, and that the provisions of section 135 [§ 241, Title 18, U. S. C. (18 USCA § 241)] do not apply to witnesses subpoenaed to appear before a grand jury. The grand jury is an integral part of the court. Its impaneling is directed by the court. It is charged by the court and advised of its duties in the matters coming before it for investigation. * * *

"We are of the opinion that a witness called before the grand jury is a witness in a 'court of the United States,' as contemplated by section 135. See, also, the case

of [Ex parte] Savin, Petitioner, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150, which we deem controlling." Davey v. United States (C. C. A. 7) 208 F. 237, 241.

In Ex parte Savin, Petitioner, 131 U. S. 267, 277, 9 S. Ct. 699, 702, 33 L. Ed. 150, the court said: "It was held in Heard v. Pierce, 8 Cush. [Mass.] 338, 341 [54 Am. Dec. 757], that 'the grand jury, like the petit jury, is an appendage of the court, acting under the authority of the court, and the witnesses summoned before them are amenable to the court, precisely as the witnesses testifying before the petit jury are amenable to the court.' Bacon, in his essay on Judicature, [No. LVI] says: 'The place of justice is an hallowed place; and therefore not only the bench, but the foot-pace and precincts and purprise thereof, ought to be preserved without scandal and corruption.'"

In Blair v. United States, 250 U. S. 273, 280, 39 S. Ct. 468, 470, 63 L. Ed. 979, the court said: "At the foundation of our federal government the inquisitorial function of the grand jury and the compulsion of witnesses were recognized as incidents of the judicial power of the United States. By the Fifth Amendment a presentment or indictment by grand jury was made essential to hold one to answer for a capital or otherwise infamous crime. * * *"

The following statement on this subject is found in People ex rel. Choate v. Barrett, Justice, 56 Hun, 351, 9 N. Y. S. 321, 322, 323: "'It is clear, from the elementary writers, and from what the court of appeals implied in the Hackley Case, 24 N. Y. [74], 78, that the grand jury room is an enlargement of the court-room, and part of the court sitting. Handing to the petit jury a letter containing remarks upon the case pending before them, has been, at nisi prius, adjudged a contempt; the jury, for convenience, being outside of the court-room proper, it is true, but legally and technically, nevertheless, a part of the court sitting; and both the grand and petit jury rooms were merely extensions of the court apartment, and are under equal jurisdiction.' In Com. v. Crans, 3 Pa. Law J. [442], 453, the court said it was 'clear that a grand jury are as much attached to the court as a petit jury. * * * In contemplation of law, a grand jury are supposed to be personally present in court. * * * They differ from a petit jury only in the particular that the latter hear both sides of the case, but both receive legal information from the same tribunal.'

Mr. Rapalje, in his work on Contempts, (section 67), says that, the grand jury being merely an appendage to the court, the refusal by a witness to answer questions put by them is a contempt of the court by whose order the grand jury was impaneled. For this proposition he cites many cases in this and in other states, notably People v. Naughton [N. Y.] 7 Abb. Prac. (N. S.) 421; People v. Kelly, 24 N. Y. 74, and People v. Fancher, 4 Thomp. & C. [N. Y.] 467, 476. In People v. Naughton, Mr. Justice Pratt held that the grand jury was a constituent part of the court of oyer and terminer, and that its proceedings were a part of the proceedings of that court. See [7 Abb. Prac. (N. S.) 421], page 423. In People [ex rel. Hackley] v. Kelly, 21 How. Prac. [N. Y.] 54, the supreme court of this department, at general term, held that the grand jury was an adjunct of the court, as well as the petit jury. It was there insisted that the commitment was illegal because the contempt did not occur in the presence of the court, but in the grand jury room, before the jury as an independent body. Leonard, J., answered this contention by saying that, 'when summoned, sworn, and organized, the grand jury are a constituent part of the court, for the performance of the functions and duties devolved upon the court, as much as a body of twelve petit jurors impaneled for the trial of a person charged with crime. * * * When the witness has been brought before the grand jury to testify, he is for the time in the custody, or under the control, of the court and the grand jury. He stands in the same relation to the court as a witness on the stand before the court and a petit jury.' It will be observed that the reasoning in many of these grand jury cases proceeds upon the analogy to the petit jury. That the latter body is directly and immediately a constituent part of the court, and the petit jury room an adjunct to the court, is treated throughout as a postulate admitting of no question. This becomes entirely clear when we free our minds from the popular notion that the judge is the court. He is a constituent part of the organization, but he is not the court. Nor is the court-room the court, nor the jury-room, nor the petit jury. The court is the totality of the constituent parts. It consists of the entire judicial organization for the trial of causes, and it is immediately present whenever and wherever, from the opening to the adjournment of the sitting, these constituent parts are actually performing the

functions devolving upon them by law. * * *"

Judge Westenhaver, in In re National Window Glass Workers (D. C. N. D. Ohio) 287 F. 219, 225, said:

"The process of the court comprehends proceedings before grand juries and the means whereby witnesses may be required to attend and testify. A grand jury has no existence aside from the court which calls it into existence and upon which it is attending. A grand jury does not become, after it is summoned, impaneled, and sworn, an independent planet, as it were, in the judicial system, but still remains an appendage of the court on which it is attending. No grand jury shall be summoned to attend any District Court unless the judge thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor. Judicial Code, § 284 (Comp. St. § 1261 [28 USCA § 421]). The District Court may discharge a grand jury whenever in its judgment it deems a continuance of the sessions of such a jury unnecessary. Judicial Code, § 285 (Comp. St. § 1262 [28 USCA § 422]). All indictments or presentments of a grand jury become effective only when presented in court and a record is made of such action. A grand jury is not, therefore, and cannot become, an independent, self-functioning, uncontrollable agency. It is and remains a grand jury attending on the court, and does not, after it is organized, become an independent body, functioning at its uncontrolled will, or the will of the district attorney or special assistant.

"The process by which witnesses are compelled to attend a grand jury investigation is the court's process and not the process of the grand jury, nor of the district attorney. If a witness fails to attend, the power, as well as the duty, to compel his attendance, is vested in the court. If, after appearing, he refuses to testify, the power, as well as the duty, to compel him to give testimony is vested in the court, and not in the grand jury. It can therefore never become an immaterial matter to the court what may be done with its process or with its grand jury. A court would not be justified, even if it were so inclined, to create or call into existence a grand jury, and then go off and leave it. A supervisory duty, not only exists, but is imposed upon the court, to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice."

See, also, United States v. Kilpatrick (D. C. W. D. Nor. Car.) 16 F. 765, 769; Parsons v. Age-Herald Publishing Co., 181 Ala. 439, 61 So. 345; Fryer v. State, 146 Ala. 4, 41 So. 172, 173; Fields v. State, 121 Ala. 16, 25 So. 726, 727; Denning v. State, 22 Ark. 131, 132; People v. McCauley, 256 Ill. 504, 100 N. E. 182, 184; Boone v. People, 148 Ill. 440, 36 N. E. 99, 101; State ex rel. Lashly v. Wurdeman (Mo. Sup.) 187 S. W. 257, 259. And compare Commonwealth v. Bannon, 97 Mass. 214; People v. Sweeney et al., 213 N. Y. 37, 106 N. E. 913, 916; People v. Sexton, 187 N. Y. 495, 80 N. E. 396, 402, 116 Am. St. Rep. 621; People v. Glen, 173 N. Y. 395, 66 N. E. 112, 114; Coleman v. State, 6 Okl. 252, 118 P. 594.

In those cases which hold that a grand jury is in some respects a body independent of the court, it is very evident that the distinction between the court as an institution and the court as personified by its presiding judge or judges, has been lost sight of. The grand jury is in many respects independent of the judge of the court, but it is as much a part of the court as an institution as is the judge or the petit jury. It is called by the court, impaneled by the court, and charged by the court. The witnesses who appear before it are subpœnaed by the court and are amenable to the court. It reports to the court, and is discharged by the court. The results of its labors become records of the court. To say that it is not a part of the court because it performs certain duties and has certain functions which may not be controlled or supervised by the judge, would be no more logical than to say that a petit jury is not a part of the court because the judge may not control its deliberations or its determination of questions of fact submitted upon a trial.

It is our conclusion that one who is or is about to be a witness before a grand jury upon a criminal proceeding pending in the United States court is a witness upon a proceeding before that court within the ordinary meaning of the words of the statute here involved. Any other construction of the statute would be not only inconsistent with the obvious purpose of Congress in enacting it, but would also be an undue restriction of its language, leading to an absurd result.

The court below did not err in overruling the defendants' demurrer to the indictment, nor did it err in refusing to direct a verdict.

The judgment appealed from is affirmed.

FARIS, Circuit Judge (dissenting).

I regret that I am not able to concur with the opinion to which the majority adheres. I differ from them but on one point; but regrettably, that point is vital to the case. The prosecution rests on a violation of the provisions of section 240, title 18 USCA. I am not able to avoid the conclusion that section 240, supra, does not cover the facts charged, or proved, in this prosecution.

It is so well-settled as to require no citation of cases, that there are no common-law crimes under the federal criminal law; so as a corollary, it follows, that before any person can be convicted of an alleged federal offense, the prosecution must be able to lay its finger on the statute which defines and denounces the act committed as a crime against the United States. If this cannot be done, the prosecution must fail.

It is equally as well-settled, as the cases cited in the majority opinion conclusively prove, that a penal statute must be strictly construed; unless by its own terms (as the statute under discussion does not) it shall provide for a liberal construction. And this means, of course, that unless a given act is clearly denounced as a crime by the plain words of a statute such act is not a crime, and that no person can be demonstrated to be guilty, or to come within the terms of a criminal statute by a priori reasoning, philosophical deduction, or logical ratiocination. The words of a criminal statute, in short, must be to the plain man, as signposts, warning him of danger.

Section 240, supra, found in the Criminal Code as section 134, was enacted in 1909 (35 Stat. 1113), and is fairly new as a statute. I have found no other case of prosecution under its provisions, of bribery of a witness before a grand jury. Violation of it is referred to in the case of Keeney v. United States (C. C. A.) 17 F.(2d) 976, as warranting a proceeding for contempt of court. Section 240, supra, nowhere mentions a grand jury. It merely denounces as a crime the receiving a bribe by one "being, or about to be, a witness upon a trial, hearing, or other proceeding, before any court or any officer authorized by the laws * * * to hear evidence or take testimony." Some four other sections of the Criminal Code which deal with analogous crimes, namely, sections 133, 135, 136, and 137 (18 USCA §§ 239, 241, 242, 243), do mention juries, but section 134, 18 USCA § 240, supra, does not.

Within the strict rule of construction enjoined on courts, I do not believe that a grand jury is either a court or an officer, and the section mentions none other than a court or an officer. So I am of opinion that no prosecution (unless for contempt, and on that we are not called to pass) will lie under section 240, supra, for the act of receiving a bribe by a witness, when that witness is a witness, or is to be a witness, before a grand jury. It may be an unfortunate instance of casus omissus, but that is a matter for the Congress to consider.

The only case cited by counsel for appellee, is Davey v. United States (C. C. A.) 208 F. 237, 241. The citation is misleading for the latter case is not in point, and if that case had held (as it did not) that section 240, applied to witnesses before a grand jury, it would have been bald dictum, because the indictment therein up for discussion was based on section 241, of title 18 USCA, while the instant case is an attempted prosecution under section 240, supra. Said section 241, by its plain words clearly applies to grand juries, for they are named specifically, while they are not so named in section 240. Simply because prosecution may lie under sections 241 or 239, title 18 USCA does not of itself at all warrant a prosecution under section 240, supra. It is quite certain that the cy pres doctrine has no application to the criminal law. I am of opinion the case should be reversed and the defendants discharged.