PADEN v. UNITED STATES. *
No. 10344.

Circuit Court of Appeals, Eighth Circuit.
Aug. 13, 1936.

*Rehearing denied Oct. 5, 1936.

Charles E. Paden, pro se.

Henry G. Morris, Asst. U. S. Atty., of St. Louis, Mo. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for the United States.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

The appellant was convicted by a jury on two counts in an indictment charging him with unlawful use of the United States mails for the purpose of executing a scheme and artifice to defraud, and for the obtaining of money and property by means of false and fraudulent pretenses, representations, and promises. The parties will be referred to as they appeared below.

The scheme charged may be summarized as follows: The defendant pur-ported to be operating a business known as the Lubri-Gas Laboratories at St. Louis, Mo. One Mueller and one Kurt inserted advertisements in one of the daily newspapers published in St. Louis on March 25, 1934, and May 20, 1934. These advertisements sought opportunities for the investment of money and services in some going business. At the time of the insertion of these advertisements, Mueller and Kurt were not acquainted with each other, nor was either acquainted with the defendant. Defendant answered both advertisements and requested an interview. In response thereto, these men called upon the defendant, and he interested them in a product called Lubri-Gas, concerning which product and the trade-mark thereto he evidently possessed some rights. He represented that he would employ these men forthwith, and would soon thereafter make them part owners of his business; that the business would be incorporated; that these two men would be officers of the corporation and that a salary of $35 per week would be paid to each, pending the incorporation and launching of the business; and that not less than 10 per cent. of the capital stock was to be allotted to each of them when the corporation was formed. The defendant represented that he had enjoyed a prosperous business with his product in prior years and that he had some $3,000 due him from an oil company in the West, which sum he expected daily, and, upon receipt of that remittance, the investors would be adequately secured, the new company financed and operations commenced. Acting and relying on these representations, Mueller and Kurt were each induced to pay the defendant $300 in cash as an investment in the business, which sum was to constitute a part of the capital of the contemplated venture. The government contends that the defendant devised this scheme to defraud, and that he unlawfully used the United States mails in furtherance thereof on March 27, 1934, and May 20, 1934, when he answered the advertisements above referred to; that defendant converted the money so paid to him to his own use, and did not carry out the agreements and promises that were made; that the promises and representations were made for the sole purpose of obtaining the money from these investors; and that he never did intend to give them anything in return for the money so paid.

Defendant was represented by several counsel during the trial and during some

stage of the proceedings when the appeal was being perfected, but the brief presented herein was apparently prepared by the defendant himself. We gather that the defendant is not a lawyer. The bill of exceptions was prepared with the assistance of one of defendant's counsel, but the defendant has set up in his brief that which he contends to be the actual testimony of the witnesses. The brief purports to dispute the verity of the summary of the testimony of the witnesses as recited in the transcript of record. Apparently, there was no reporter present at the trial, and the parties evidently produced to the best ·of their ability their recollection of the testimony in narrative form as it appears in the bill of exceptions. The defendant's attempt to dispute and vary the bill of exceptions in the brief by assuming to recite his purported recollection of the exact questions and answers is improper, and the evidence recited cannot be examined by us in considering this appeal. We are confined to a consideration of the testimony as it is reflected in the bill of exceptions in the record. There is also much extraneous matter in the defendant's brief.

Defendant sets up twenty-nine assignments of error. Approximately nine pertain to alleged error in the court's ruling on the admissibility of the evidence. The remainder refer to alleged errors in the court's charge, error of the court in voicing prejudicial remarks in presence of the jury, error because the court failed to charge on certain phases of the issues, insufficiency of the evidence to support the verdict, and defects in the indictment. The assignments which attempt to charge error in the court's ruling show no objection, no ruling of the court, and no exception. Neither the court's charge nor any portion of it, appears in the record. No exception was taken or preserved at the time to any part of the court's charge; the record does not indicate that any requests were made for instructions, nor that any exception was taken by reason of the court's failure to charge the jury as requested. The remarks of the court during the trial are assigned as error, but the alleged prejudicial statements do not appear in the record. Error is assigned by reason of the court's failure to instruct the jury to disregard certain remarks of the assistant United States attorney, but the alleged prejudicial remarks, though referred to in the assignments of error, are absent from the bill of exceptions. No demurrer was filed at the close of the government's case, nor was a motion for directed verdict made on the ground of insufficiency of the evidence. It does not appear from the record that the insufficiency of the indictment was ever raised before or during the trial, although the first assignment of error assumes that a demurrer was filed. Clearly, therefore, there is no record before us that will permit us to pass upon the merits of this appeal. Wagner Electric Corp. v. Snowden (C.C.A. 8) 38 F.(2d) 599; United States v. Nickle (C.C.A. 8) 70 F.(2d) 873; Mansfield v. United States (C.C.A. 8) 76 F.(2d) 224; Wilson v. United States (C.C.A. 8) 77 F.(2d) 236. See Rules Nos. 10, subsec. 1, 36 and 37, subsec. 1, United States Circuit Court of Appeals, Eighth Circuit, effective October 1, 1935.

However, in view of the fact that this is a criminal proceeding and the defendant has been unfortunately handicapped in preparing his own brief and proceeding with the appeal, we have, notwithstanding the absence of any record that is sufficient to review, deemed it proper to carefully consider all of the evidence in order to be assured that there has been no miscarriage of justice. See Ayers v. United States (C.C.A. 8) 58 F.(2d) 607.

We are of the opinion that the verdict is supported by substantial testimony. The insufficiency of the record prevents us from discussing intelligently the other errors assigned. The testimony given by Mueller and Kurt was not controverted in any material degree. The defendant did not avail himself of the privilege and opportunity to testify in his own behalf. The evidence indicating the use of the United States mails in answering the advertisements of Mueller and Kurt was uncontradicted and sufficient to support that essential element in the indictment. Whether or not the defendant had entered into a scheme to defraud as charged was, on the evidence, clearly a question for the jury. It would appear that both these men were · induced to make this investment upon the fraudulent promises and representations of the defendant. The company was never incorporated, and no steps were taken to operate the business, except in a small, inconsequential way. Mueller received no salary whatsoever, and the only · money ever paid to Kurt was the sum of $70. The remaining capital contributed by these two men was apparently converted by the defendant to his own use. The jury was

justified in finding that defendant's representation that he had $3,000 coming from an oil company in the West was a sheer fabrication. His conduct with reference to this money would justify the jury in believing that it was a part of a scheme to lull the investors into a feeling of security. The eight trips that he made with Mueller to one of the local banks on the pretext of seeing whether this check had arrived corroborated the government's contention that he devised this scheme to defraud and deceive these two investors, and that he never intended to abide by his many inducing statements and promises. We are satisfied that, on the record, the verdict of the jury should not be disturbed.

The judgment of the lower court must be affirmed, and it is so ordered.