Submitted on briefs July 1; modified November 25; rehearing
denied December 30, 1930

# SCHRAMM *v.* DONE ET AL.
(293 P. 931)

*Edward J. Clark,* of Portland, for appellants.

*Raley, Raley & Warner,* of Pendleton, for respondent.

18

BEAN, J. The first assignment of error is that the court erred in decreeing that those of appellants who own stock of the original issue in the bank are liable for the assessment, and that the court erred in not dismissing the suit as to the first alleged cause of suit.

It is the contention of plaintiff that the holders of the shares of stock of the original issue are liable solely by reason of their consent to the constitutional amendment and that such consent would be inferred from the participation in the affairs of the bank after the constitutional amendment; that the holders of shares of the increases of capital stock, which increases took place subsequent to and were subscribed for and issued subsequent to the constitutional amendment, are liable for the individual liability created by the constitutional amendment for the reason that as to such new stock and holders thereof, the new constitutional amendment and the statute of 1911 were in existence and were controlling when they subscribed for such stock.

■ Article I, section 21 of the Oregon Constitution, reads in part thus: ''No * * * law impairing the obligations of contracts, shall ever be passed.'' As stated, the First Bank of Pilot Rock was organized in 1907. The contract rights of the original stockholders with the corporation were fixed by the charter and the statute and constitution as they stood at that time: *First Nat. Bank v. Multnomah State Bank*, 89 Or. 37, 39 (173 P. 462); *Owensboro v. Owensboro Water Wks.*, 243 U. S. 166 (37 S. Ct. 322, 61 L. Ed. 650, 660); 7 Fletcher, Cyc. of Corp., § 4291; 1 Thompson, Corp. (3d Ed.), § 371.

The vital question in the case at bar is as to what date the existing law fixes the contract rights of the stockholders. After careful consideration that point

was passed upon in *First National Bank v. Multnomah State Bank,* supra, in the following language found on page 39 of 89 Or.:

"The corporation was organized in 1911 and the contract rights of stockholders with the corporation were fixed by the law as it stood at that time. These rights could not be impaired by a later statute."

The court in the same case quoted with approval the following:

"A statute which authorizes an additional assessment upon existing paid-up stock is unconstitutional": 1 Cook on Corp. (7 Ed.), § 242, p. 689.

"It may be laid down as a rule that a statute authorizing assessments to be made on existing full paid stock is unconstitutional and void as to existing stockholders": 4 Thompson on Corporations (2d Ed.), § 4816.

"A statute authorizing additional assessment on paid-up stock is unconstitutional": 1 Purdy's Beach on Private Corporations, 174.

■■ Corporations are protected, as a rule, from the retroactive operation of laws. Where such provision is not afforded by constitutional authority the courts, on principles of natural justice, will so construe all laws, including constitutional provisions, as intended to be prospective in their operations unless a retroactive operation is clearly indicated: *Lewellyn v. Frick,* 268 U. S. 238 (45 S. Ct. 487, 69 L. Ed. 934, 937). In determining whether the constitution has a retroactive or prospective operation affecting the lability of stockholders, liability is worked out through and to the corporation, not directly with the creditor: *Crocker v. Gentry,* 127 Or. 168, 174 (271 P. 38). We find no express purpose to make the constitutional amendment retroactively applicable to banks organized before its

adoption or no legislative effort to bring them under the amendment by providing that certain acts should be deemed a waiver of their constitutional immunity from double liability and the acceptance of double liability.

We will next notice the opinions in this state bearing directly upon the question involved. In *Norris Safe & Lock Co. v. Weaver*, 81 Or. 670 (160 P. 807), the plaintiff instituted an action against stockholders to enforce payment of a judgment against the Citizens' State Bank of Ontario, alleging that on November 23, 1911, and when the indebtedness for a safe was incurred by the bank, the defendants were stockholders in the Citizens' State Bank of Ontario. In an opinion by Mr. Justice BURNETT, after quoting the original Article XI, section 3, and also the amendment thereto of 1912, the following language is recorded:

"Whatever may be the meaning of this provision it certainly cannot be extended to include those who are not depositors, but only creditors of the institution for merchandise sold to it. Neither can it be made to impair the obligation of a subscription contract made before its adoption so as to double the original liability. So far as the increased responsibility is concerned, the utmost effect it can have is to operate in favor of the depositors in a bank incorporated since the constitution was so amended."

That action was certainly to enforce a double liability against stockholders in a state bank organized prior to the constitutional amendment of November, 1912. It was a direct, pertinent ruling upon the issues in that case. The plaintiff was told by the court that the Citizens' State Bank of Ontario was organized prior to the amendment of the constitution and that the liability of its shareholders then existing was not

affected by the amendment, and on that account, according to the allegations of the complaint, the plaintiff could not recover. Although the complaint was defective, the ruling was germane to the case. There is no good reason for holding that the ruling by Mr. Justice BURNETT was mere dictum, as contended by plaintiff. The effect of the constitutional amendment was called in question in that case wherein it was attempted to enforce a double liability upon stockholders of a bank organized before the amendment to the constitution and who made their subscriptions prior to such amendment, and the ruling in regard to the limit of the effect of the change in the organic act was one of the pertinent reasons for denying the right of plaintiff to recover. However, the last sentence quoted above should be read in the light of, and in connection with, the prior language in regard to the impairment of ''the obligation of a subscription contract made before its adoption.'' The question of the liability of subscribers of bank stock after the constitutional amendment was not involved in that case. Nor was such question in the mind of the writer of the opinion, as evidenced by the language thereof.

In *First National Bank v. Multnomah State Bank,* 87 Or. 423 (170 P. 534), in an opinion by Mr. Justice MOORE, it appears that one Rostad, on December 26, 1911, subscribed and paid for shares of the capital stock of the defendant bank. The capital of the bank being impaired, at the instance of the superintendent of banks at a meeting of the stockholders of the bank, a resolution was adopted, without the consent of Rostad, attempting to levy an assessment of $100 per share on all the stock of the bank. In the suit to restrain the collection of the assessments, the opinion in *Norris Safe &*

*Lock Co. v. Weaver,* supra, was quoted from with approval at page 433 of the report. It was held, as shown by the syllabus, that:

"Stock in a bank subscribed for when article XI, section 3, of the Constitution, provided, as it did when the corporation was created, that stockholders should be liable for the corporation's indebtedness only to the amount of their unpaid subscription, was not subject to the subsequent amendment (see Laws 1913, p. 8) imposing a double liability on stockholders in a bank."

We quote from the opinion at page 431 of 87 Or.:

"Considering the legal principles put forth by plaintiff's counsel, the rule is firmly established that a charter is a contract between the corporation and its stockholders, and also between them and the state, which act of incorporation will be protected by the United States Constitution: 2 Cook, Corp. (4th Ed.), §§ 493, 495. This author at section 497 of that volume, says:

"'A statute passed subsequently to the granting of a charter, and increasing the liability of a stockholder on his stock for debts already incurred, is unconstitutional and void unless the Legislature has reserved the right to alter or amend the charter.'"

In the present case it is conceded that no power was reserved by the state, either by the charter granted the bank or by any provision of law in existence when the bank was chartered, to change the charter of the bank or impose additional burdens upon the corporation or its shareholders. It was not until 1915 (see Laws of 1915, ch. 112, P. 111) that the Legislature attempted to reserve the right to alter or amend charters thereafter granted. The law of 1911 is clearly prospective in its language.

Further consideration regarding the effect of the provisions for additional liability of stockholders was given upon a closely reasoned petition for rehearing by

able counsel in the case of *First National Bank v. Mult-nomah State Bank,* 89 Or. 37 (173 P. 462), in an opinion by Mr. Justice McCamant. As contended, a distinction was recognized between the statute imposing a new personal liability on a stockholder and one authorizing assessments on stock enforceable only by a sale of the stock. The opinion, as shown on page 38, states: "The rule sustained by the weight of authority makes statutes of the latter type inapplicable to corporations organized prior to their enactment."

■ The constitutional provision against impairing the obligations of contracts applies to amendments, either by statute or by the constitution, directly or indirectly increasing the liability of stockholders to creditors of the corporation: 7 Fletcher on Corp., § 4294, citing *Evans v. Nellis,* 101 Fed. 920.

■ The extent of a stockholder's liability, as previously stated, is either fixed by the constitution of the state or the statute or the charter of the corporation itself. Many of the states, through their legislatures, have enacted laws affecting stockholders of banking corporations which do not apply to other corporations, such as the double liability of the par value of the stock. All such liabilities are statutory, and in their application and enforcement against stockholders the liability is strictly construed and limited. The extent of the liability against the stockholders in a state bank is fixed and determined by the statute and constitution of the state: Magee on Banks and Banking (3d Ed.) p. 83, § 64.

■ Although there is some conflict in the decisions, the prevailing rules are as follows: Where the state has not reserved the power to alter, amend or repeal the charter of a corporation, the provision of the constitu-

tion of the United States against laws impairing the obligation of contracts protects the contract between the corporators or members, and between them and the corporation, as well as the contract between the state and the corporators or corporation (*Dartmouth College v. Woodward,* 4 Wheat. (U. S.) 518, 4 L. Ed. 629) ; and, therefore, any material or fundamental amendment of the charter by or under legislative authority, or by a constitutional amendment, in order that it may be binding, must have the unanimous assent of all the stockholders or members, and the legislature cannot authorize acceptance of or assent to such an amendment by a majority of the stockholders or members so as to bind the minority: 14 C. J., p. 187, § 193.

■■ The liability of shareholders beyond their original subscription, except where the stockholders have themselves created an extraordinary responsibility, is the creature solely of legislation. It can arise only under the charter or statute or under the organic law of the corporate existence: 2 Morse on Banks, § 675. As the liability is in derogation of the common-law, the law imposing the same is strictly construed: *Brunswick Ter. Co. v. Nat. Bank,* 192 U. S. 386 (48 L. Ed. 491, 24 S. Ct. 314.)

The record discloses that the original issue of shares of stock was subscribed, paid for and issued long prior to 1912 and most of it is still held by the original purchasers. The remainder has been sold to purchasers, some of whom were purchasers before and some after 1912. There is no evidence of intent, that we find, to consent to any modification of the original shareholders' contract rights or those of the bank pertaining thereto. The reports made either by the examining committees or the directorate of the bank in part con-

tain answers to a form of question as to the percentage of stockholders who could respond to double liability if it existed, but there is nothing to show the communication of these reports to the stockholders. There is no testimony that the depositors became such in reliance upon double liability. The record shows printed statements generally distributed by the bank advising the depositors that they were dealing with a bank incorporated prior to 1912. There appears to be no contract between the original stockholders and the depositors for a double liability, either in fact or in law.

■ Unquestionably, the primary and main purpose of the banking act, Laws of 1907, ch. 138, the amendments thereof and provisions supplementary thereto, was "regulating the business of banking." It is not questioned but what the state had the right to regulate such business, but such right to regulate and control banking business under the police power of the state cannot go to the extent of imposing a personal liability upon the stockholders in a bank contrary to the express constitutional provision in force at the time of the organization of the bank and when the subscriptions for the shares of stock were made: *Yoncalla State Bank v. Gemmill,* 134 Minn. 334 (159 N. W. 798 L. R. A. 1917A, p. 1223); *Norris Safe & Lock Co. v. Weaver,* supra.

■ As we have stated, where the state has not reserved the power to alter, amend or repeal a corporate charter, it cannot alter or amend the same in any material respect without the consent of the corporation or the corporators, and in such a case, therefore, an amendment, to take effect, must be either expressly or impliedly accepted: 14 C. J., § 190, p. 184. We fail to find any act of the corporation or of the original stock-

holders shown to have been taken which could not have been taken, and presumably would have been taken, by it or them, if the constitutional amendment had never been adopted, or any consent on their part to the constitutional amendment, either actual or legally implied. Apparently the old shareholders accepted their dividends and continued their interest in the affairs of the bank in the same manner as though the constitutional amendment had never been adopted. The purchasers of the original stock plainly agreed to pay $100 per share and for that amount they are liable for all debts of the corporation. In order to make a radical change in their contract and double their liability there should be some conscious assent to the change or some act or acts clearly and legally rendering them liable for twice the amount they contemplated and to which they agreed.

■ The amendment of the constitution of November 29, 1912, cannot be applied to subscription contracts made for stock in the Pilot Rock bank, which was organized prior to the amendment and which subscriptions were made and the shares of stock issued before the amendment, without impairing the obligations of such subscription contracts, in violation of the constitution of the United States and also out of harmony with the organic law of the state of Oregon: 2 Morse on Banks, § 676.

The second assignment of error pertains to the court's finding and decreeing that those of the appellants who own stock in the First Bank of Pilot Rock are liable for the assessment made as to issues or increases of capital stock in the bank of 1914, 1919 and 1924, and in not dismissing the suit as to the causes of suit embracing such issues or increases.

■ In 1912, the electors of the state of Oregon adopted the amendment to section 3, article XI of the constitution, so as to provide that the stockholders of corporations or joint stock companies, conducting the business of banking, shall be individually liable for the benefit of the depositors of said bank to the amount of their stock at the par value thereof, in addition to the par value of such stock, or what is usually termed "a double liability." This amendment was bruited about the state of Oregon in an election campaign before its adoption and ever since has been a part of the organic law of the state and presumed to be known by the people of the state. The contracts between the subscribers of the increases of capital stock and the corporation were entered into after this amendment to the constitution. The amendment became a part of such contract and by their subscription the shareholders agreed to comply with its terms.

In 7 Fletcher, Cyc. Corp., § 4291, the rule applicable is stated thus:

"General laws under which a corporation is formed constitute its charter, and when a corporation is formed under general laws a contract exists within the meaning of the Constitution the same as if the charter had been conferred by a special act of incorporation."

To the same effect see Thompson, Corp. (3d Ed.), Vol. 1, §§ 371, 372.

In *Colby v. Medford*, 85 Or. 485 (167 P. 487), we read:

"The established rule is that every contract embraces and includes all those laws which exist at the time and place where the contract is executed and where it is to be performed, and affect the validity, construction, discharge and enforcement of the contract."

■ Applying the rule thus enunciated to the present case, the holders of the increases of stock mentioned are liable to the depositors to the amount of their stock at the par value thereof, in addition to the par value of such shares, or are subject to a double liability.

■ When the First Bank of Pilot Rock was first organized it contracted with the state of Oregon that the stockholders should be liable for the amount of the stock subscribed, and no more. The shareholders purchasing stock in the corporation took such stock with the law as it then stood, as a part of their contract with the corporation: *Southern Surety Co. v. Oklahoma,* 241 U. S. 582 (36 S. Ct. 692, 60 L. Ed. 1187). At that time the existing shareholders were advised by the law, as it then stood, that the capital stock might be increased as provided by the statute. They were also advised that no liability would ever be imposed on them for the debts of the corporation in excess of their unpaid subscription. Therefore, when the corporation, in 1914, 1919 and 1924, increased the amount of the capital stock it was not inconsistent with the contract with the original shareholders. The contract between the subscribers of the new or increased capital stock and the corporation was governed by the law as it was when that contract was made: *Dagg v. Hammons,* 34 Ariz. 445 (272 P. 643, 645); 6 R. C. L., pp. 325, 327, §§ 314, 317; *Bettman v. Cowley,* 19 Wash. 207 (53 P. 53, 57, 40 L. R. A. 815).

Unquestionably the articles of incorporation or charter, the statute and constitutional provisions applying thereto, in force at the time the contractual relations were established, which was when the subscriptions were made for the increased shares of stock, are in the nature of a contract between the corporation and the state; also between the corporators or members and

between them and the corporation. The subscribers for the shares of the increased stock promised to faithfully comply therewith and perform such contract. The authorities that we have heretofore cited, showing that the holders of the original shares of stock were liable only to the extent fixed by the articles of incorporation, the statute and constitution of the state, are, in principle, also authority for the proposition that the subscribers to the increases of capital stock are liable, in accordance with the statute and constitution of the state as they existed at the time they made their subscriptions for the increases of capital stock. By so holding, full force and effect is given to the constitutional amendment of 1912. See opinion in the case of *Haberlach v. Tillamook County Bank,* 134 Or. 279 (293 P. 927), this day rendered.

The decree of the circuit court will be modified so as to exclude therefrom the holders of the original shares of stock subscribed for prior to November 29, 1912. As to the subscribers to the increases of capital stock, the decree of the circuit court will be affirmed.

KELLY, J., took no part in the consideration of this case.