SEABORN, BANK EXAMINER AND SUPERINTENDENT OF BANKS, v. WINGFIELD

No. 3080

September 5, 1935.                    48 P. (2d) 881.

*Gray Mashburn,* Attorney - General; *H. R. Cooke,* Special Deputy Attorney - General; and *Harwood & Diskin,* for Appellant:

*Geo. B. Thatcher*, for Respondent:

# OPINION

*Per Curiam:*

The appellant brought this suit in the Second judicial district court to recover a judgment against the respondent in the sum of $103,226, claiming that as a shareholder in said bank to the extent of 2,377 shares of its capital stock he was individually liable thereon to the stockholders and creditors of the bank by virtue of section 12 of the banking act of 1911, approved March 22, 1911, and being section 661 of the Nevada Compiled Laws. The complaint contains allegations which, so far as relevant, may be stated as follows: The United Nevada bank was incorporated as a banking institution and organized under and pursuant to said act. On the 12th day of December, 1932, the appellant, finding the bank to be insolvent, took charge and possession of its property, business, and assets, and ever since that time has had charge and possession thereof as bank examiner and superintendent of banks. The respondent, George Wingfield, was one of the incorporators of the bank, and has owned said shares of stock since that time. That section 12 of the banking act of 1911 by which it is claimed respondent's liability arose, reads as follows: "The stockholders of any bank organized under this act, shall be individually liable to the creditors thereof, equally and ratably, and not one for another, in addition to the amount of stock owned by

them, in a sum equal to the par value of such stock and no more."

The total indebtedness of the said bank on the 12th day of December, 1932, was $1,745,287.60, and the total value of its assets on that date was the sum of $1,571,574.60, leaving a net difference between the amount of liabilities and the value of assets of $173,713.

It is alleged that respondent is liable under said provision, notwithstanding the provisions of article 8, sec. 3, of the constitution of Nevada, which provides as follows: "Dues from corporations shall be secured by such means as may be prescribed by law; provided, that corporators in corporations formed under the laws of this state shall not be individually liable for the debts or liabilities of such corporation."

Liability in this respect is put upon the ground that Wingfield waived any benefit intended to be conferred by said constitutional provision and is estopped from claiming immunity thereunder by becoming an incorporator of the bank, a stockholder thereof, and by receiving dividends, and for the additional reason that he contracted with the creditors of the bank and such persons as might become creditors to accept the provisions of said banking act approved March 22, 1911 (Comp. Laws 1929, sec. 650 et seq.), including the liability to such creditors provided for in said section.

In due time respondent filed an answer setting up the unconstitutionality of said section 12. The answer was attacked by a motion to strike and demurrer. These were overruled by the court, and judgment in favor of Wingfield was rendered on the pleadings. Hence this appeal.

Appellant contends that the word "corporators," as used in section 3, article 8, of the constitution, must be held to mean only the original incorporators or organizers; that is, those associates who are the getters-up of the corporation, and, if so construed, said provision of the constitution is not unconstitutional. On the other hand, respondent is opposed to such a restricted

construction. The inferences favorable to their construction of the word "corporators," which opposing counsel have drawn from the constitutional debates, territorial legislation, and constitution making prior to the adoption of the state constitution, are of equivocal value. We have found it unprofitable to indulge in similar speculation. We think the word "corporators" appearing in the constitution must be taken in its general or usual sense to mean a member of the corporation, one of the stockholders or constituents of the body corporate. That such is the general or usual meaning attributed to the word is borne out by the statements of courts, textwriters and lexicographers. In Re Atlantic Mut. Life Ins. Co., 2 Fed. Cas., page 168, at page 169, No. 628, it is said: "A corporator is one who is a member of the corporation, one of the stockholders or constituents of the body corporate."

Sawyer, Circuit Judge, in Re Lady Bryan Min. Co., Fed. Cas. No. 7978, a case arising in Nevada, speaking for the court, said: "A 'corporator,' as understood both in the law respecting corporations, and in common speech, is 'one who is a member of a corporation.' (Bouv. Law Dict. and Webst. Dict.) That is to say, one of the constituents, or stockholders, of the corporation. I do not know that the word has even been used in any other sense."

The dictionaries referred to define the word as stated.

In the State of Illinois at the time of the decision in Gulliver v. Roelle, 100 Ill. 141, the sixteenth section of the general insurance law of 1869 read: "The trustees and corporators of any company organized under this act shall be severally liable for all debts or responsibilities of such company, to the amount by him or them subscribed, until the whole amount of the capital of such company shall have been paid in, and a certificate thereof recorded as hereinbefore provided."

A section of the constitution provided: "Dues from corporations, not possessing banking powers or privileges, shall be secured by such individual liabilities of

the corporators, or other means, as may be prescribed by law." Const. 1848, art. 10, sec. 2.

Construing the word "corporators" as used in the statute and constitution, the Illinois court said: "It can scarcely admit of a doubt that the general and popular meaning of the word 'corporator' concurs with the highest lexicographical authority,—that it means a member of a corporation. * * * And there can be no doubt that such is the sense in which the term is used in the 2d section of article 10 of the constitution of 1848." See, also, Shufeldt v. Carver, 8 Ill. App. 545.

"A corporator is one who is a member of a corporation; one of the stockholders or constituents of the body corporate." 2 Words and Phrases, First Series, p. 1623.

In the ordinary sense of the term, "corporator" is used synonymously with "stockholder." Thompson on Corporations, vol. 4 (2d ed.), p. 1298. See Zabriskie v. Cleve., Col., & Cinn. R. Co. et al., 23 How (U. S.) 381, 16 L. Ed. 488, Louis Snider's Sons' Co. v. Troy, 91 Ala. 224, 8 So. 658, 11 L. R. A. 515–518, 24 Am. St. Rep. 887, and Schramm v. Done, 135 Ore. 16, 293 P. 931– 936, for use of the word in that sense.

The case of Chase v. Lord et al., 77 N. Y. 1, presented by appellant, is contra to the current of authority. Concerning this case, however, we may say, that the wording of the New York statute furnished a basis upon which reasonable minds might differ as to the correct construction. Three of the seven judges joined in a strong dissenting opinion, in which it was said: "The word 'trustees' as used here, means directors, and the word 'corporators' means members of the corporation. These two words commonly have such meaning when used in relation to corporations."

In view of the commonly accepted meaning of the word "corporator," we are led to believe that the framers of the constitution, among which were some very able lawyers, were familiar with that meaning. It would seem, too, to be quite unlikely that they intended

to ignore that sense of the word and employ it in a restricted sense. To so construe it would be most technical, and constitutions are not to receive a technical construction. Constitutions do not deal in particulars, and the makers would hardly be unduly solicitous for the protection of a class so relatively few and unimportant as the getters - up of a corporation. If the framers of the state constitution intended to impose a double liability on stockholders, they probably would have expressed that intention in the clearest language, especially when such liability is in derogation of the common law.

It is worthy to note as bearing on the probabilities of the case that, at the first meeting after the adoption of the constitution, no provision was made for the individual liability of a stockholder in the corporation law then enacted. This omission is more significant when it is remembered that at the first, as well as at other, sessions of the legislature, there were many members who were prominent members of the constitutional convention. State v. Glenn, 18 Nev. 34–43, 1 P. 186. A further significant circumstance is revealed by the fact that almost half a century elapsed before provision for a stockholders individual liability was attempted to be incorporated in the corporation law. It is also to be observed that, since the adoption of the act of 1911, notwithstanding bank failures have happened in this state prior to the instant case and such banks were unable to pay their depositors, no bank examiner, state banking board, attorney-general, or any creditor or depositor of any such bank has sought heretofore to charge the stockholders with individual liability to the creditors or depositors by reason of section 12 of said banking act. On the contrary, the appellant has heretofore recognized the invalidity of section 12 of said banking act by declaring as follows in his biennial report of 1929–30: "It having been found that the double liability clause (section 12 of the banking act) is in conflict with the state constitution, which provides that incorporators shall not be liable for the debts of

the corporation, I recommend that the legislature be asked to take the initial steps to amend the constitution so as to except the incorporators of banks from this provision. When and if such amendment becomes a fact, all stockholders of banking corporations should be required to file annually with the bank examiner an affidavit as to their ability to meet this contingent liability."

"Where a doubt may exist as to the proper construction to be placed on a constitutional or statutory provision, courts will give weight to the construction placed thereon by other coordinate branches of government and by officers whose duty it is to execute its provisions." State v. Brodigan, 35 Nev. 35–38, 126 P. 680, 682.

An unqualified expression of the view we take is found in Thompson v. Reno Sav. Bank, 19 Nev. 103, 7 P. 68, 69, 3 Am. St. Rep. 797. The court said: "The shareholders are not, under the constitution, liable for the debts of the corporation."

This expression, on a point not necessarily arising in the case, is not binding on us, it is true. However, it is of persuasive force. It coincides with the general opinion as to the meaning of the word "corporator," and besides, is the opinion of a former member of this court, apparently concurred in by his associates, as to the meaning of the word "corporators" as used in our constitution. The supreme court of that period recognized the meaning to be synonymous with stockholders or members of a corporation. Our conclusion renders section 12 of the banking act null and void.

There is no merit in appellant's contention that, assuming that the constitution intended to exempt stockholders from double liability, it meant to do so only for the entire debt of the corporation and not for the stockholders' proportionate share of the indebtedness. Such intention does not appear by express provision or just implication.

It is contended by appellant that the contractual liability of the stockholders of the United Nevada bank was established when the bank incorporated under the

banking act of 1911, and that respondent, as a stockholder, thereby waived any exemption under the constitution and entered into a contract with the depositors and creditors of the bank, defined by the terms of the statute.

It is true that the contractual liability of respondent was fixed at that time. Such liability was fixed by the bank's articles of incorporation, the constitution, and laws of the State of Nevada then in force. Schramm v. Done, 135 Ore. 16, 293 P. 931, 932. In the case just cited, it was held that the contract rights of the original stockholders with the corporation were fixed by the charter and the statute and constitution as they stood at that time. 7 R. C. L., p. 370, sec. 351.

■ The nature of such a contract is well stated in Haberlach v. Tillamook County Bank, 134 Ore. 279, 293 P. 927, 928, 72 A. L. R. 1245. In that case the court said:

"It is settled law that, when a person subscribes for shares of stock in a corporation and his subscription is accepted by the corporation, the constitution of the state and all valid laws then in force which limit the liability of a stockholder become a part of the subscription contract and are incorporated in it. [Citing cases.]

"In such case, the stockholder agrees that, in consideration of the benefits he expects to derive from the stock ownership, he will perform all obligations that the law, at the time he enters into the contract, imposes upon a stockholder, and the corporation agrees that, in consideration of his purchase of the stock, it will not enforce as against him any obligation not imposed by law. or promised at the time the subscription contract was made."

■■ The law under which the bank was incorporated is an essential element of respondent's contract with the corporation as one of its stockholders, but section 12 of that law, being in. conflict with the constitution, can in no wise form a part of such contract. It is only a valid law touching a stockholder's liability that becomes incorporated in his contract. Where the state

constitution declares what the liability of a stockholder for the debts of a corporation shall be, the legislature may not impose an additional liability. Wood v. Hamaguchi, 207 Cal. 79, 277 P. 113, 63 A. L. R. 861; Louis Snider's Sons' Co. v. Troy, 91 Ala. 224, 8 So. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887; Yoncalla State Bank v. Gemmill, 134 Minn. 334, 159 N. W. 798, L. R. A. 1917A, 1223. It was held in the last-cited case that the police power of the state to regulate the banking business does not authorize the imposition of an additional liability on the stockholders of a banking corporation when such burden is contrary to an express constitutional provision in force at the time of the organization of the bank and the purchase of the stock by the stockholder.

■ We come now to the contention of waiver and estoppel. It must be borne in mind, as stated in Ireland v. Palestine, etc. Turnpike Co., 19 Ohio St. 369, and quoted with approval in Haberlach v. Tillamook County Bank, supra: "In a contract between the company and a stockholder, or in an action by the former, or its creditors, against the latter, the stockholder is to be regarded as an individual person, separate and distinct from the corporation. He becomes a stockholder by virtue of a contract with the company, and he has a right to stand upon the terms of that contract, interpreted and limited by the laws under which it was made."

This distinction is quite generally recognized, and differentiates many cases cited by appellant in which corporations have been held estopped to question an unconstitutional law. We have examined with care most of the large number of cases which counsel for appellant, by prodigous industry have collected in their briefs, particularly those holding to the effect that one who invokes the provisions of a law may be denied the right to question its constitutionality. Typical of the latter are the federal cases of Hurley v. Commission of Fisheries, 257 U. S. 223, 225, 42 S. Ct. 83, 66 L. Ed. 206; Shepard v. Barron, 194 U. S. 553, 24 S. Ct. 737, 48

L. Ed. 1115; Pierce Oil Corp. v. Phoenix Refining Co., 259 U. S. 125, 42 S. Ct. 440, 66 L. Ed. 855; Wight v. Davidson, 181 U. S. 371, 21 S. Ct. 616, 618, 45 L. Ed. 900; Booth Fisheries Co. v. Industrial Commission, 271 U. S. 208, 46 S. Ct. 491, 70 L. Ed. 908; St. Louis Malleable Casting Co. v. George C. Prendergast Construction Co., 260 U. S. 469–472, 43 S. Ct. 178, 67 L. Ed. 351.

In Hurley v. Commission, supra, it was held that one cannot in the same proceeding, both assail a statute and rely upon it. That is certainly not this case. Moreover, there is nothing to indicate that defendant ever relied on section 12 of the 1911 banking act. In Wight v. Davidson, supra, the question of estoppel was not determined by the court, although it was strongly intimated that appellees, who had obtained a decree of the court of appeals of the District of Columbia (16 App. D. C. 371), reversing the supreme court of the district confirming an assessment upon their lands known as the "Kall" tract, for alleged benefits accruing from the opening of certain streets adjoining such lands, were estopped to question the act of Congress under which the assessment was made. The court said: "It may well be doubted whether the appellees are in a position to question the validity of the statute. They are the owners of the 'Kall' tract mentioned in the 1st section of the act, and with respect to which it was made a condition that the owners should dedicate the land in said tract contained within the lines of the streets to be extended; and, it appears by the record, that, in order to procure the desired action of the commissioners, they did dedicate to the District of Columbia for highway purposes the land in said tract contained within the lines of S, Twenty - second, and Decatur streets. * * * By such dedication the appellees put the act into operation, and voluntarily subjected themselves to its provisions, including the mode of assessment."

In Shepard v. Barron, supra, it was held that an objection that the frontage rule of assessment for a public improvement, prescribed by 87 Ohio Laws, p. 113,

operated as a denial of due process of law, cannot be urged to defeat the collection of the assessments, by abutting owners who petitioned for the improvements under the act, actively participated in carrying out the work, recognized the justice of the assessments from time to time during its progress, and signed a statement for the purpose of inducing the issuance and purchase of county improvement bonds practically to the effect that the work had been properly done, and that there was no defense to the bonds.

In Pierre Oil Corp. v. Phoenix Ref. Co., and St. Louis Malleable Casting Co. v. George C. Prendergast Constr. Co., cited above, it was held that a corporation which avails itself of the benefits conferred by a statute cannot deny its validity.

It is not difficult to see that the situation in the above citations does not resemble the case here. They might be more nearly parallel if the banking corporation was contesting the validity of the 1911 banking act to which it owed its existence and capacity to do business and receive benefits as such, or to some part thereof essential to those ends. But they are not at all to the point made that a stockholder of a corporation may be estopped to contest the constitutionality of a statute imposing on him a personal liability for the debts of a corporation in violation of an essential element of his contract, namely, the constitution which expressly inhibits such liability, nor has such a case been noted in the vast list in appellant's briefs. In Booth Fisheries Co. v. Industrial Commission, 271 U. S. 208, 46 S. Ct. 491, 70 L. Ed. 908, also relied upon by appellants, the question was widely different. It is authority merely for the rule that an employee who elects to accept the benefits of a workmen's compensation act is estopped to attempt to escape its burdens by asserting that it is unconstitutional.

■ Over against the cases of this type relied on by appellant may be noted cases of the class of Hanover Fire Insurance Co. v. Carr, 272 U. S. 494, 47 S. Ct. 179,

185, 71 L. Ed. 372, 373, 49 A. L. R. 713; Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927. In the former it was held that a state may not exact, as a condition of a corporation doing business within its limits, that its rights secured by the constitution of the United States may be infringed. To the contention that the corporation waived such rights, the court said: "One argument urged against our conclusion is that the relation of a foreign insurance company to the state which permits it to do business within its limits is contractual, and that by coming into the state and engaging in business on the conditions imposed it waives all constitutional restrictions and cannot object to a condition or law regulating its obligations even though as a statute operating in invitum it may be in conflict with constitutional limitations. This argument cannot prevail, in view of the decisions of this court in well-considered cases. Home Ins. Co. v. Morse, 20 Wall, 445, 22 L. Ed. 365; Western U. Teleg. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Terral v. Burke Constr. Co., 257 U. S. 529, 42 S. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186; Fidelity & D. Co. v. Tafoya, 270 U. S. 426, 46 S. Ct. 331, 70 L. Ed. 664; Frost & Frost Trucking Co. v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457."

Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927, is to the same effect. In Morse v. Metropolitan S. S. Co., 88 N. J. Eq. 325, 102 A. 524, 526, it was held that, the provision of the corporation act authorizing the appointment of a recorder without notice being unconstitutional, the corporation could assert the invalidity notwithstanding it was incorporated under the act. In answer to the contention of waiver, the court said: "The unsoundness of this contention is apparent. Persons, whether natural or artificial, will be presumed to have entered into a contract with reference to the valid laws of the state. Only the provisions of the contract which are legally enforceable will control the parties thereto. The fact that the

defendant incorporated under an act which contained an unconstitutional provision cannot render the provision enforceable, nor confer any power on the court to enforce it."

It is conceded that the articles of· incorporation do not provide for a double liability of stockholders, and we find nothing in the banking act of 1911 providing or implying that incorporation under it should be deemed a waiver of constitutional immunity. The mere fact of incorporation and organization under the law are not enough from which to infer an intention on the part of the getters-up of the corporation to waive the constitutional inhibition. Section 12 (section 661 Comp. Laws 1929) in its nature is distinctively independent of every other section of the act, and is declared so in the act. Section 73 (section 722) declares: "Each section in this act, and every part of each section is hereby declared to be independent of every other section and part of section, and the holding of a section or part of section to be void or ineffectual for any cause shall not be deemed to affect any other section or part of section."

In regard to respondent being affected by section 12, the reasoning of the court in the case of Philadelphia, etc., St. Ry. Co.'s Petition, 203 Pa. 354, 53 A. 191, 195, is· quite pertinent. It was asserted in that case that, because the appellant company was organized under an act of 1889, it was estopped to deny the constitutionality of section 14 of the act (P. L. 216). Concerning this claim, the court said: "The suggestion that, as appellant owes its corporate existence to the act of 1889, it cannot now deny the constitutionality of section 14, with its amendment, is without force. This section,̦ both in its purpose and effect, is a distinct legislative enactment. If it be completely eliminated, all the other provisions stand in full force. * * * Leaving out this section, the act stands as a whole complete in its parts. * * * Appellant owes its existence to the act of 1889, so far as that act itself had life. It derives no being in ·whole or part from

a dead section of it. It neither affirmed nor denied the validity of it when it took out its charter under the lawful enactments of the general act." See 12 C. J., p. 771.

■ It is urged. by appellant that depositors and creditors were misled to their prejudice by relying for security upon said section 12, which they had a right to do because the section was presumed to be constitutional. The argument is without force. Respondent is answerable only to the obligation of his contract, and a person will be presumed to have entered into a contract with reference to the valid laws of the state. Morse v. Metropolitan S. S. Co., supra.

■ Respondent, as one of the getters-up of the banking corporation, had a right to effect that purpose under the 1911 act without reference to section 12 of the act. This he could do, and, in so doing, his act or omission cannot be said to form the basis of an estoppel. To hold otherwise would be to say that one must heed an unconstitutional law; that, if he does not, his conduct may mislead others to their prejudice. Neither the corporation nor respondent asserted any right or performed any act under section 12. It was not needful. to bring the corporation into existence or to cause it to function as an entity, being as section 12 was a distinct and independent provision pertaining only to a stockholder's liability. Moreover, by force of the constitution, it was a dead limb on the legislative tree. An unconstitutional law is tantamount to no law at all. As said in Meagher v. Storey County, 5 Nev. 244, 250: "A law which is in conflict with the fundamental law of the state is no law, and therefore that it is so in conflict is as available in defense as that no law whatever had been adopted."

It was forcibly put in Norton v. Shelby County, 118 U. S. 425–442, 6 S. Ct. 1121, 1125, 30 L. Ed. 178: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

Nothing whatever having been done under it or required to be done in the formation or organization of the corporation or in carrying on its business and being a dead section, how can it be said to give rise to the estoppel claimed by appellant? We are unable to give our sanction to the claim.

The judgment is affirmed.