Argued and submitted May 7, 2015, general judgment reversed in part, supplemental judgment reversed and remanded October 19, 2016; petition for reconsideration allowed by opinion February 23, 2017
See 283 Or App 914, 389 P3d 421 (2017)

Joseph DiNICOLA,
an individual,
*Plaintiff-Respondent,*

*v.*

SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 503,
OREGON PUBLIC EMPLOYEES UNION,
an Oregon non-profit corporation,
*Defendant-Appellant.*

Marion County Circuit Court
12C18681; A156042

383 P3d 924

Gregory A. Hartman argued the cause for appellant. With him on the briefs were Michael J. Morris and Bennett, Hartman, Morris & Kaplan, LLP.

Nathan R. Rietmann argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Garrett, Judge, and Wollheim, Senior Judge.

## GARRETT, J.

This case is a dispute between defendant Service Employees International Union Local 503, OPEU (Local 503), and plaintiff Joseph DiNicola, a past-president of the union and a current member of its General Council. DiNicola brought this special proceeding under ORS chapter 65, the Oregon Nonprofit Corporation Act, to compel Local 503 to disclose its membership list and to convene a meeting of the membership. The trial court entered general and supplemental judgments for DiNicola, including an award of injunctive relief.

On appeal, Local 503 argues that the trial court fundamentally erred in determining that the union is subject to ORS chapter 65 at all. It further argues, in the alternative, that, even if the union is subject to ORS chapter 65, the court nonetheless erred in its application of that chapter. Specifically, the union contends that the trial court ordered membership list disclosures that exceed what is statutorily required; that the court erred in determining that the union's Board of Directors violated ORS chapter 65 in failing to obtain approval of the General Council before submitting a matter to a vote of the membership; and that the evidence does not support the court's finding that an injunction was necessary to prevent Local 503 from continuing to violate the law. Finally, Local 503 challenges the award of attorney fees to DiNicola.

As explained below, we agree with the trial court's threshold conclusion that ORS chapter 65 applies, but agree with Local 503 that the court erred in several respects in applying the provisions of that chapter. Below, we first address the applicability of ORS chapter 65. We then describe the factual background of this litigation as it pertains to the specific issues raised by DiNicola's claims.

ORS chapter 65 governs nonprofit corporations and sets forth the requirements for their formation. It describes corporate powers, the rights and obligations of directors and officers, the rights of members (including the right to inspect and copy records), and requirements for meetings and voting. When ORS chapter 65 was enacted in 1989, it

was a well-established principle that the legislature cannot impair the contractual rights of a corporation. *See* Or Laws 1989, ch 1010; *Lorntsen v. Union Fisherman's Co.*, 71 Or 540, 543-44, 143 P 621 (1914) (explaining that the filing of articles of incorporation and organization pursuant to statutory requirements gave rise to a contract between the state and the corporation that could not be impaired by subsequent legislation). That principle has been understood to mean that a corporation formed under one set of statutes will be subject to subsequent amendments of those statutes only if, at the time of incorporation, the legislature reserved the right to change them. In *Schramm v. Done Et Al.*, 135 Or 16, 27, 293 P 931 (1931), the Supreme Court said:

> "[W]here the state has not reserved the power to alter, amend, or repeal a corporate charter, it cannot alter or amend the same in any material respect without the consent of the corporation or the corporators, and in such a case, therefore, an amendment, to take effect, must be either expressly or impliedly accepted[.]"[1]

This basic principle was reflected in the 1989 enactment of ORS 65.957, which provides that ORS chapter 65 applies

> "to all domestic corporations in existence on October 3, 1989, that were incorporated *under any general statute of this state providing for incorporation of nonprofit corporations if power to amend or repeal the statute under which the corporation was incorporated was reserved.*"

(Emphasis added.)[2]

---

[1] In *Schramm*, the court said that the general laws under which a corporation is formed "constitute its charter, and when a corporation is formed under general laws a contract exists within the meaning of the Constitution the same as if the charter had been conferred by a special act of incorporation." 135 Or at 29 (citations omitted). Underpinning that principle is the assumption of contract law that "'every contract embraces and includes all those laws which exist at the time and place where the contract is executed and where it is to be performed, and affect the validity, construction, discharge, and enforcement of the contract.'" *Id.* (quoting *Colby v. City of Medford*, 85 Or 485, 522, 167 P 487 (1917)).

[2] A similar provision exists in ORS chapter 60, which applies to for-profit corporations. ORS 60.957 provides:

> "This chapter applies to all domestic corporations in existence on June 15, 1987, that were incorporated under any general statute of this state providing for incorporation of corporations for profit if power to amend or repeal the statute under which the corporation was incorporated was reserved."

Thus, the primary question concerning the applicability of ORS chapter 65 to this case is whether the law under which Local 503 was incorporated reserved to the legislature a power to amend or repeal that law. Local 503 incorporated in 1945 as the Oregon State Employees Association, under a statute adopted in 1941. OCLA §§ 77-401 to 77-408e, Or Laws 1941, ch 462. The 1941 act was codified within a section of the Corporations and Associations Code entitled "Nonprofit Corporations: Charitable, Religious and Educational." The 1941 act did not expressly reserve a power to amend or repeal its provisions related to nonprofit corporations. In the view of Local 503, that omission requires the conclusion that there was no reservation of the right to amend or repeal the statute under which Local 503 was incorporated, as required by ORS 65.957. It follows, according to Local 503, that the union cannot be subject to the later-enacted ORS chapter 65.

But, as DiNicola points out, a reservation of legislative power was *already* codified within the Corporations and Associations Code. Before the enactment of the 1941 statute under which Local 503 was incorporated, there were numerous provisions governing the formation of corporations. Within a chapter entitled "Private Corporations in General," OCLA section 77-241 (1930) provided:

> "All powers granted to or lawfully assumed by any corporation formed under the general laws of this State may subsequently be amended, altered or repealed, but not so as to impair or destroy any vested corporate rights."

In practical effect, OCLA section 77-241 (1930) reserved to the legislature the right to amend corporate charters through the amendment or repeal of general laws under which a corporation was formed.[3] *See Schramm*, 135 Or at 24. As a textual matter, OCLA section 77-241 (1930) appears to provide the reservation required by ORS 65.957. It unambiguously applied to *any* corporation formed under the general laws of Oregon.[4] It is undisputed that the 1941

---

[3] Local 503 does not contend on appeal that the application of ORS chapter 65 would be subject to the exception in OCLA section 77-241 (1930) for an impairment of a "vested corporate right[]."

[4] A "general law" is a law that is operative throughout the state, as opposed to a "special law" enacted for local application. *See Mid-County Future Alternatives v. City of Portland*, 310 Or 152, 795 P2d 541 (1990).

act under which Local 503 incorporated was a general law. Textually, there is no basis on which to conclude that OCLA section 77-241 (1930) did not apply to all incorporations, including nonprofit corporations formed under that general law. Because the reservation already existed, there was no reason for the legislature to enact an additional reservation within the 1941 act itself.

Context supports our conclusion. Prior to the 1941 enactment, the Corporations and Associations Code included a chapter relating to the formation of nonprofit corporations, OCLA §§ 77-401 to 77-436, with its own general provisions. When the legislature repealed those general provisions in 1941 and replaced them with OCLA sections 77-401 to 77-408e (1941), under which Local 503 incorporated in 1945, the legislature included a provision showing that it contemplated that the reservation of powers contained within OCLA section 77-241 (1930) was applicable. OCLA section 77-408d (1941) provided:

"Any non-profit corporation heretofore created under any previous law of this state which shall not have filed a power of attorney as provided in [section 77-408a of the 1941 act] [designating and appointing a person for receipt of service of process] *** shall thereupon be deemed to be dissolved and its rights, powers and privileges automatically revoked and repealed."

OCLA section 77-408d shows that the legislature contemplated that the newly enacted provisions would apply to previously formed nonprofit corporations, suggesting that the legislature in 1941 acted with an understanding that its reservation of powers in OCLA section 77-241 (1930) applied to sections of the Corporations and Associations Code relating to nonprofit corporations. We conclude that the reservation of powers in OCLA section 77-241 (1930) applied to the 1941 act. Thus, when Local 503 was incorporated under that act in 1945, the legislature had reserved the power to amend or repeal it. It follows that the requirement for applicability of ORS chapter 65 is satisfied, and that the trial court did not err insofar as it ruled that Local 503 is subject to that chapter.

Having concluded that ORS chapter 65 is applicable, we describe the additional factual and procedural

background that bears on Local 503's alternative contentions on appeal.

Local 503 is a labor organization of over 30,000 members. The governance of Local 503 is described in its bylaws and its "Administrative Policies and Procedures." Any conflicts between the two governing documents are to be resolved under the bylaws, which may be amended only by the General Council or the membership. Article VIII, Section 1, of the bylaws describes the "General Council" as "the supreme governing body of the Union" and requires that the General Council "shall meet in regular session every even-numbered year." Under Article IX of the bylaws, the General Council is a representative body of delegates that meets to consider resolutions and conduct other business, on dates fixed by the Board of Directors. As a past-president of Local 503, plaintiff is a member of its General Council.

The bylaws define the Board of Directors as "the governing body of the Union between sessions of General Council." The board is required to hold a minimum of six meetings per year. Under Article VIII, Section 2, "the administration of the affairs of the Union is vested in the Board." The bylaws assign to the board the powers and duties to carry out all recommendations and instructions from the General Council, and the duty to "exercise general authority consistent therewith to formulate the program and administer the affairs of the Union between sessions of the General Council." The board is authorized to "adopt such rules and delegate such power as it deems appropriate, consistent with the Union's governing documents." The board has authority under the bylaws to conduct business in executive session, to revoke or reinstate membership, to adopt amendments to the "Administrative Policies and Procedures," to grant exceptions to union membership, to designate "locals" and "affiliates," and to resolve challenges to elections.

With certain exceptions, ORS 65.774 provides that a member of a nonprofit corporation is entitled to inspect the records of the corporation.[5] When, after a proper request

---

[5] ORS 65.774 provides, in part:

"(1) Subject to subsection (5) of this section and ORS 65.777(3), a member is entitled to inspect and copy, at a reasonable time and location specified

under ORS 65.774, a nonprofit corporation refuses to allow inspection of its membership list, ORS 65.781(2)[6] authorizes a member to apply to the circuit court in the county where the corporation's business office is located for an order to permit inspection and copying of the records.

This litigation has two parts. It began in 2012 when Local 503 refused to provide DiNicola with the names and contact information for the delegates who would attend the August 2, 2012, meeting of the General Council. Local 503 asserted that ORS chapter 65 did not apply and that DiNicola's request was too broad under the union's bylaws. On DiNicola's application for an order permitting disclosure of the records, filed under ORS 65.781, on August 1, 2012, the trial court ordered Local 503 to produce a list of the names and addresses of the General Council delegates. The court also issued an order awarding DiNicola attorney fees of $18,750 under ORS 65.781(3) (providing for fees to a prevailing party), but it did not enter final judgment.

Local 503 provided a list but, as subsequently alleged by DiNicola, the list did not include email addresses or worksite locations—information that Local 503 had in its database and that DiNicola wanted. In January 2013, DiNicola requested that Local 503 allow him to

"inspect and copy [Local 503] member database records reflecting the name, home and office address, home and

---

by the corporation, any of the records of the corporation described in ORS 65.771(5) if the member gives the corporation written notice of the member's demand at least five business days before the date on which the member wishes to inspect and copy.

"(2) Subject to subsection (5) of this section, a member is entitled to inspect and copy, at a reasonable time and reasonable location specified by the corporation * * *:

"* * * * *

"(c) * * * the membership list."

Under ORS 65.777(4), a corporation complies with a member's request for inspection of a membership list by "providing the member with a list of its members that was compiled no earlier than the date of the member's demand."

[6] ORS 65.781(2) provides:

"If a corporation does not within a reasonable time allow a member to inspect and copy any other record, the member who complies with ORS 65.774(2) and (3) may apply to the circuit court in the county where the corporation's principal office, or, if none in this state, its registered office, is located for an order to permit inspection and copying of the records demanded."

office telephone numbers, email addresses, as well as employer and job title, and who they represent in accordance with the 2012 Official General Council Delegate Calculation Report for each elected or appointed delegate to the 2012 General Council."

Local 503 denied the request.

During that same period, the union's board received advice from its legal counsel recommending a change in its legal structure to an unincorporated association. In March 2013, the board unanimously agreed to submit that recommendation to a vote of the membership. DiNicola believed that the board's action circumvented the authority of the General Council. Thus began the second phase of this litigation.

ORS 65.201 requires a nonprofit corporation to hold an annual meeting of its membership.[7] Under ORS 65.207, if a corporation does not hold an annual meeting as required, a member of a nonprofit corporation may make application to the circuit court to summarily order a meeting.[8] DiNicola filed such an application with the trial court. In the same application, citing ORS chapter 65 and ORS 661.040, DiNicola also sought a declaration that he is entitled to inspect the records described in his request of January 9, 2013, and an injunction to prohibit Local 503 from depriving DiNicola and "other similarly situated members" of the right to inspect the union's records.

In an order of September 4, 2013, the trial court ruled that Local 503 had violated ORS chapter 65 by: (1) refusing to disclose corporate records as required by ORS 65.774; (2) failing to hold annual meetings, as required by ORS 65.201; and (3) filing amended articles of incorporation in 2001 and 2010 without approval of the membership,

---

[7] ORS 65.201(1) provides:

"A corporation with members shall hold a membership meeting annually at a time stated in or fixed in accordance with the bylaws."

[8] ORS 65.207(1) provides:

"The circuit court of the county where a corporation's principal office is located, or, if the principal office is not in this state, where the registered office of the corporation is or was last located, may summarily order a meeting to be held[.]"

in violation of ORS 65.437. The court further ruled that Local 503 had violated ORS chapter 65, as well as its own bylaws, by attempting to submit a ballot to its members for a change in the corporate form without the authorization of the General Council, in violation of ORS 65.451, ORS 65.437, and ORS 65.001(4). The court found that the union's violations "have been regular, sustained, and ongoing," and that, if an injunction did not issue, the union would continue to violate ORS chapter 65.

The court ordered Local 503 to hold a meeting of the membership. The court also ordered Local 503 to provide to DiNicola a database of information concerning its membership, including each member's name, membership type, job title, work location, United States Postal Service mailing address, work and personal email address, union position or title, "sub-local number," state agency or bargaining unit employer, and assigned voting eligibility. The court entered a general judgment for DiNicola and later entered a supplemental judgment awarding DiNicola attorney fees of $63,075 and costs of $977.50.

On appeal, Local 503 does not challenge the trial court's order of August 1, 2012, requiring production of the General Council membership list. Nor does it challenge that aspect of the court's September 4, 2013, order requiring a general meeting of its membership. But Local 503 contends in its second assignment of error that the court exceeded its authority in the September 2013 order by requiring a disclosure of records not required by the pertinent statutes.[9]

The source of the trial court's authority to order disclosure of Local 503's records is ORS chapter 65. Whether the trial court's order is consistent with that chapter or exceeds its scope presents a question of law that we review for legal error. *See State v. Roberts*, 231 Or App 263, 267, 219 P3d 41 (2009), *rev den*, 347 Or 608 (2010) (the meaning

---

[9] We reject DiNicola's contention that this issue is moot because Local 503 complied with the trial court's order and made the required disclosure. The order included a provision enjoining Local 503 "from denying any lawful member request to inspect and copy corporate union records under ORS 65.774, ORS 65.224, or ORS 661.040." To the extent that the order mandated a disclosure, on future requests, that Local 503 asserts was excessive, it was not moot.

of a statutory provision is a question of law). We agree with Local 503 that the disclosure ordered by the trial court went beyond what the statutes contemplate.

Under ORS 65.224, in advance of a meeting, a nonprofit corporation is required to prepare a list of its members containing the members' "names, addresses and membership dates" and, if there are classes of members, the "number of votes each member is entitled to vote at the meeting."[10] The list must be available to the membership, and ORS 65.224(2) provides that a member may seek to inspect it, pursuant to ORS 65.774. ORS 65.774(2) provides, in turn, that

> "a member is entitled to inspect and copy, at a reasonable time and reasonable location specified by the corporation, any of the following records of the corporation if the member meets the requirements of subsection (3) of this section and gives the corporation written notice of the member's demand at least five business days before the date on which the member wishes to inspect and copy:
>
> "* * * * *
>
> "(c) * * * the membership list."[11]

As previously noted, if a nonprofit corporation does not allow a member to inspect documents under ORS 65.774(2)(c), then the member can request a court-ordered inspection. ORS 65.781(2). DiNicola requested such an inspection here, after Local 503 rejected his request to inspect its membership list. We conclude that the trial court had authority under ORS 65.781(2) to order Local 503 to allow inspection of members' names, addresses (including email addresses), membership dates, and assigned voting eligibility. But the additional disclosures that the trial court ordered—the

---

[10] ORS 65.224(1) provides, in part:

"A corporation shall prepare an alphabetical list of the names, addresses and membership dates of all its members. If there are classes of members, the list must show the address and number of votes each member is entitled to vote at the meeting."

[11] DiNicola's supplemental application cited "ORS chapter 65 and ORS 661.040" in support of his request for inspection. The trial court's judgment ordered disclosure under ORS 65.774. Under ORS 65.224(4), a member is also entitled to request a preliminary injunction or temporary restraining order permitting inspection of a membership list maintained under ORS 65.224.

member's membership type, job title, work location, union position or title, "sub-local number," and bargaining unit employer—exceeded the information required to be maintained under ORS 65.224 and provided under ORS 65.774, and therefore exceeded the court's authority.

DiNicola contends that the required disclosures were nonetheless authorized by ORS 65.207. When, as here, a court orders a "public benefit corporation" to hold a meeting, ORS 65.207(2) authorizes the court to "enter other orders necessary to accomplish the purpose or purposes of the meeting." In DiNicola's view, the ordered disclosures were required to allow DiNicola to communicate with the membership in advance of the ordered meeting. But DiNicola has not explained why he needed information in addition to that required to be maintained under ORS 65.224 and disclosed under ORS 65.774(2)(c).[12]

In its third assignment of error, Local 503 challenges the sufficiency of the evidence with respect to the trial court's finding that Local 503 violated ORS chapter 65 and the union's bylaws by attempting to submit a ballot to its members for a change in the articles of incorporation without authorization from the General Council. Local 503 also challenges the sufficiency of the evidence to support the trial court's finding that, in the absence of an injunction, Local 503 will continue to violate ORS chapter 65.[13]

As an initial matter, we reject Local 503's request that we review the challenged findings *de novo*, as this is not an exceptional case in which *de novo* review is warranted. We therefore review the trial court's legal conclusions for errors of law and are bound by the court's findings if they are supported by any evidence in the record. ORS 19.415(3)(b);

---

[12] As noted, the trial court cited ORS 65.774 as the source of DiNicola's right to disclosure. On appeal, DiNicola makes a passing reference to ORS 661.040, which authorizes a court to issue a restraining order requiring inspection of a labor organization's "books, records and accounts." ORS 661.041(3), (4). But he does not explain why an inspection pursuant to that statute would require a disclosure of content in excess of that required to be maintained under ORS 65.224 and provided under ORS 65.774.

[13] We reject without discussion DiNicola's contention that Local 503 did not preserve its objections to those findings.

*Eagles Five, LLC v. Lawton*, 250 Or App 413, 415 n 2, 280 P3d 1017 (2012).

We have reviewed the record and we agree with the union that there is no evidence in support of the trial court's finding that, in the absence of an injunction, Local 503 would continue to violate the law. We also agree with Local 503 that the trial court erred in determining that Local 503 violated ORS chapter 65 and its bylaws by referring to the membership the board's recommendation for a vote to change the union's legal structure. DiNicola's argument is premised on a two-pronged assertion: (1) Under ORS 65.451(1), only a board of directors is authorized to restate a nonprofit corporation's articles, and (2) the Local 503 Board of Directors is not its board, within the meaning of ORS 65.001; the General Council is. The underlying premise of DiNicola's assertions is flawed. The Local 503 Board of Directors did not restate the articles of incorporation; it sought to submit that question to a vote of the membership and to recommend that the membership vote for the change. There was no violation of ORS 65.451(1).

But even if the Board of Director's action is viewed as a "restatement" of the articles under ORS 65.451(1), we would conclude that the board did not violate the statute or the union's bylaws. ORS 65.451(1) states that "a corporation's board of directors may restate its articles of incorporation at any time with or without approval by the members entitled to vote on articles or any other person." DiNicola asserts that the board of Local 503 is not its "board of directors" within the meaning of ORS 65.451(1), because the bylaws and articles describe the General Council as the "supreme governing body." Under ORS 65.001(4),

> "'[b]oard' or 'board of directors' means the individual or individuals vested with overall management of the affairs of the domestic or foreign corporation, irrespective of the name by which the individual or individuals are designated, except that an individual or a group of individuals is not the board of directors because of powers delegated to the individual or group under ORS 65.301."

Under the statutory definition, a board is the body "vested with overall management of the affairs" of the corporation.

It is clear to us that, under the bylaws, the Local 503 Board of Directors, not the General Council, is the body charged with the overall management of the affairs of the union. The bylaws state that the board "is the governing body of the Union between sessions of General Council." Contrary to DiNicola's contention, that is not a *delegation* of powers to the board by the General Council, which meets only every other year. As we have explained above, the bylaws state that the board *is* the governing body when the General Council is not in session. It is also the body responsible for the administration of the union. Under Article VIII, Section 2, of the bylaws, "the administration of the affairs of the Union is vested in the Board." The Board of Directors, not the General Council, is the body authorized to restate the union's articles of incorporation under ORS 65.451(1). The trial court therefore erred in finding that Local 503 violated ORS chapter 65 and its bylaws by referring a vote to the membership based on a recommendation of the board.

In its final assignment of error, Local 503 contends that the trial court's award of attorney fees is excessive. In view of our conclusions that the trial court erred in several respects, we conclude that the attorney fee award should be reconsidered to reflect that DiNicola did not prevail on those issues. ORS 20.220(3).

General judgment reversed in part; supplemental judgment reversed and remanded.